67 N.J. Super. 450 (1961)
171 A.2d 15
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CLARENCE BROWN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 17, 1961.
Decided May 12, 1961.
*451 Before Judges GOLDMANN, FOLEY and LEWIS.
Mr. William C. Gotshalk argued the cause for appellant.
Mr. Stephen M. Gretzkowski, Jr., argued the cause for respondent (Mr. Norman Heine, Camden County Prosecutor, attorney; Mr. Stephen M. Gretzkowski, Jr., Legal Assistant, on the brief).
The opinion of the court was delivered by LEWIS, J.A.D.
Defendant, Clarence Brown, was convicted of knowingly and unlawfully possessing divers papers, documents, slips and memoranda pertaining to the business of lottery or lottery policy, so-called, in violation of N.J.S. 2A:121-3. He was sentenced to serve not less than two nor more than three years in the New Jersey State Prison. He appeals from this conviction and sentence.
It is contended on appeal that (1) the evidence of constructive possession of lottery paraphernalia was incompetent and insufficient to support conviction; (2) the admission of such evidence found in the physical possession of others than defendant was prejudicial error; (3) objections were made to the admission of such evidence and in respect thereto the court erred when it (a) overruled timely objections, and (b) denied motions to strike the same, at the end of the *452 State's case and at the end of the whole case; and (4) the court erred (a) when it referred to such evidence in its instructions to the jury, and (b) when it refused to charge as requested by the defendant.
The indictment of the defendant followed three simultaneous raids conducted at premises No. 7 Coleman Avenue, No. 11 Coleman Avenue, and a saloon at Coleman and Moore Avenues, Delaware Township. These properties are located in the same immediate area and for three days prior thereto were under surveillance. During that time, the police authorities observed the defendant entering and leaving each of the premises. At the time of the raids, according to the witnesses for the State, papers, slips or memoranda pertaining to lottery were found at the three locations. Defendant pleaded not guilty and denied knowledge and possession as charged.
At No. 7 Coleman Avenue, the raiders found miscellaneous papers, two large pads and three small pads on the first floor dining room table. They saw defendant running upstairs and throwing papers in the hallway on the second floor. He was apprehended in his bedroom and slips, alleged to be numbers slips, were taken from his wallet. The defendant denied ownership of any of the papers found in the hallway and denied that any lottery slips were in his wallet. Although testimony indicated that there were various types of markings, including dates, figures and notations, on the several papers, no effort was made to ascertain in whose handwriting these markings were made. This dwelling house was owned by one Beulah Branch. Defendant had had a misunderstanding with his wife, left the homestead at No. 11 Coleman Avenue, and rented a bedroom on the second floor of No. 7 Coleman Avenue. Another boarder by the name of Mr. Godfrey Lowers also lived in the same house.
At No. 11 Coleman Avenue, the entire place was searched. In the dining room on the first floor, a number of small slips and two sheets of paper from a shorthand book, containing columns of numbers, were taken from the table and, *453 at the desk where Mrs. Pauline Brown was sitting at the time, Detective Runner found a yellow tablet paper on which were columns of numerals. In the rear bedroom on the second floor numbers slips were located on top of the wardrobe and in a jewel box. On a shelf of a small night table in the front bedroom Detective DiEva located a ledger which contained dates, numbers and names. Title to the premises at No. 11 Coleman Avenue is in defendant's name and he had access thereto. Mrs. Brown testified under oath that the number sheets belonged to her, and that her husband was not involved in the transaction  that "he was against it." She was indicted and convicted of knowingly and unlawfully possessing such papers in violation of the lottery statute. She originally pleaded not guilty on November 19, 1959, which plea was retracted, and one of non vult entered on December 10, 1959. Subsequently, she was sentenced to the New Jersey Reformatory for Women at Clinton, and the sentence was suspended on condition that she pay a fine of $1,000.
At the saloon the State's evidence was that one David H. "Sticky" Wilson was apprehended as he approached the entrance, and that numbers slips were discovered, one under his wristwatch and one in his pocket. He was likewise indicted under the anti-lottery statute for knowingly possessing the same, to which he pleaded non vult. This plea was not accepted by the court (he had a conviction record) and was changed to one of not guilty. His trial was pending. In the saloon, a bartender by the name of Russell Walter Cooper had a numbers slip in his right front shirt pocket, one in his left front shirt pocket, and a slip with numerals on it was in his "right rear pocket." The bartender admitted that these numbers slips belonged to him, and he testified that defendant "didn't want no numbers or anything like that going into the saloon." Bartender Cooper was indicted for knowingly possessing said slips. His original plea of not guilty on November 19, 1959 was subsequently changed to non vult on December 10, 1959. On December 17, *454 1959 he received a sentence of two to three years in State's Prison which was suspended on condition that he pay a fine of $1,000. Title to the saloon was in defendant's name.
It is true, as argued in defendant's brief, that penal statutes are to be strictly construed. State v. Vanderhave, 47 N.J. Super. 483 (App. Div. 1957), affirmed 27 N.J. 313 (1958); Neeld v. Giroux, 24 N.J. 224 (1957). This court, however, in State v. Rucker, 46 N.J. Super. 162, 167 (App. Div. 1957), certification denied 25 N.J. 102 (1957), in acknowledging that general principle held that "such construction must not be unduly narrow or artificial or disregard manifest legislative intention," citing State v. Friedman, 135 N.J.L. 419, 421 (Sup. Ct. 1947), affirmed 136 N.J.L. 634 (E. & A. 1948).
There are two essential elements involved in the statutory language "knowingly possesses," which was paraphrased in the indictment  "knowingly and unlawfully did possess." These elements are "knowledge" and "possession." Counsel for the defendant takes the position that actual physical, corporeal possession is required. In essence, he attributes to such words a meaning of actual physical manual possession. Such an interpretation would be too restrictive, and we are not without precedent for so concluding. In State v. Labato, 7 N.J. 137 (1951), our Supreme Court construed the terminology of the Crimes Act, R.S. 2:147-3 (now N.J.S. 2A:121-3) and also the comparable language in our Disorderly Persons Act, R.S. 2:202-16 (now N.J.S. 2A:170-18), and, when considering the question of possession under these acts, stated:
"`Possession' is an ambiguous term derived from the Roman law. It has variant connotations; but on well-settled principle the word is to be given a strict construction in statutes defining criminal and penal offenses. It signifies an intentional control and dominion. Bergedorff v. United States, 10 Cir., 37 F.2d 248 (1929). Animus possidendi is of the essence of possession. Such was its primary meaning under Roman law. `Possession is the occupation of anything with the intention of exercising the rights of ownership in respect to it.' Hunter, Rom. Law 209. Under the cited statutes, *455 `possession' imports `corporeal possession in fact. * * * The elements of this possession are: First, the mental attitude of the claimant, the intent to possess, to appropriate to oneself; and, second, the effective realization of this attitude. Effective realization involves the relation of the claimant to other persons, amounting to a security for their noninterference, and the relation of the claimant to the material thing itself, amounting to a security for exclusive use at will. All the authorities agree that an intent to exclude others must coexist with the external facts, and must be fulfilled in the external physical facts, in order to constitute possession. * * *'"
citing State v. Metz, 107 Kan. 593, 193 P. 177 (Sup. Ct. 1920), wherein corporeal possession was said to be "the continuing exercise of a claim to the exclusive use of a material thing," and the case of People v. Leavitt, 301 N.Y. 113, 92 N.E.2d 915 (Ct. App. 1950) which stood for the proposition that there must be "conscious" possession.
It is apparent from these explanatory definitions that actual physical manual possession is not the test; a mental attitude to appropriate and an effective realization are prerequisites. In short, "to possess" means "to have actual control, care and management of, and not a passing control, fleeting and shadowy in its nature." State v. Cooper, 32 S.W.2d 1098, 1099 (Mo. Ct. App. 1930); United States v. Wainer, 170 F.2d 603 (7 Cir. 1948); United States v. Landry, 257 F.2d 425 (7 Cir. 1958). To the same effect, United States v. Malfi, 264 F.2d 147, 150 (3 Cir. 1959), certiorari denied 361 U.S. 817, 80 S.Ct. 57, 4 L.Ed.2d 63 (1959); and Brown v. United States, 222 F.2d 293, 297 (9 Cir. 1955). The general authorities treating the subject of possession and constructive possession are manifold; suffice the following references: 73 C.J.S., Property, sec. 14, pp. 197, 198, 202-204; 42 Am. Jur., Property, sec. 42, p. 219; Restatement, Law of Torts, sec. 216, p. 551; 3 Wharton's Criminal Law & Procedure, "Gambling and Lotteries," sec. 939, p. 66 (1957).
In the Landry case, supra, which concerned a violation under the Narcotics Control Act, the court said:
*456 "The government plausibly contends that the fact of possession may be shown by circumstantial proof. With this we agree; in fact, this court has so held. United States v. Pinna, 7 Cir., 229 F.2d 216, 218. But no court, so far as we are aware, has held that proof of possession by one person may be established by circumstantial evidence when the undisputed direct proof places that possession in some other person." [257 F.2d 431.]
The undisputed direct proofs in the case at bar placed numbers slips and papers in the actual possession of Mrs. Pauline Brown at No. 11 Coleman Avenue; also on the person of David H. "Sticky" Wilson, and in the pockets of Russell Walter Cooper, the bartender.
We should at this point emphasize the fact that Mrs. Brown and Cooper were indicted and convicted, and Wilson was indicted and was awaiting trial, all as a result of the simultaneous raids and the evidence then found in their possession. It was the admissibility of this self-same evidence to which counsel for the defendant objected. He argues it could not have been in the possession of defendant if it was actually in the possession of others. Mere ownership of No. 11 Coleman Avenue and the saloon by the defendant, or his marriage to Mrs. Pauline Brown, particularly where there was an estrangement, or the fact that the bartender Cooper was an employee of the defendant, do not, in themselves, standing alone, connect the defendant with "knowingly possessing" lottery paraphernalia actually found in the possession and control of others. Moreover, Mrs. Brown gave testimony absolving defendant from her lottery transactions. Although "Sticky" Wilson was not in the saloon when apprehended, and he testified that he intended to turn over numbers slips to the defendant, neither this evidence nor any connection between "Sticky" Wilson and the defendant was corroborated or established by the prosecution. The relevancy of evidence is not always enough to justify its admissibility. McCormick on Evidence, sec. 152, p. 319, observes:
"There may remain the question, is its value worth what it costs? There are several counterbalancing factors which may move the court to exclude relevant circumstantial evidence if they outweigh its *457 probative value. In order of their importance, they are these. First, the danger that the facts offered may unduly arouse the jury's emotions of prejudice, hostility or sympathy. Second, the probability that the proof and the answering evidence that it provokes may create a side-issue that will unduly distract the jury from the main issues. * * *"
Throughout the trial, counsel for the defendant vigorously and repeatedly objected to any testimony respecting the raids at No. 11 Coleman Avenue and at the saloon. Likewise, objections were made to the admissibility of any evidence found in the possession of Mrs. Brown, "Sticky" Wilson, and the bartender, Cooper, without producing direct evidence connecting the same to and with the defendant. Motions were made to strike such evidence as not having been so connected. These several objections and motions were respectively overruled and denied.
In the charge to the jury, the court, after referring to the two residences and the saloon, commented: "* * * you may convict if you are satisfied by the proof required that the defendant was in possession of numbers slips in all or any one of these places on the day in question." The following colloquy took place between counsel for the defense and the court, in the presence of the jury:
"Mr. Gotshalk: The real story is that other people were in these other places. They pleaded guilty. This man did not plead guilty.
The Court: That may be but the inference is there before the Jury that he kept numbers in three places, the saloon, his home, and number 7. Now if that is not so, then there should be a statement to that effect made to the Jury; otherwise, he may be convicted on inference." (Emphasis added)
The jury was not fully instructed on this subject, and the court denied the request of counsel for the defendant to charge the jury as follows:
"I charge you that there is no connection between the possession of Mr. Brown and the possession of his wife, of Mr. Cooper or of Mr. Wilson and that you must disregard all evidence introduced with respect to number paraphernalia discovered on Mr. Cooper's person, Mr. Wilson's person or on Mrs. Brown's possession, because *458 Mr. Brown has not been properly connected with them by the prosecution."
Thus the jury was left to infer that connection was not necessary, or to infer that there was a connection or confederacy between the defendant and Mrs. Brown, Cooper and "Sticky" Wilson, or any of them, or to infer constructive possession based upon any such inferred connection or confederacy. In other words, the jury could infer an inference upon an inference. Ordinarily, a presumption of fact to be allowable must be an immediate inference to be drawn from the facts proved. Price v. New York Central R.R. Co., 92 N.J.L. 429, 432 (E. & A. 1918); Cowdrick v. Pennsylvania Railroad Co., 132 N.J.L. 131 (E. & A. 1944), certiorari denied 323 U.S. 799, 65 S.Ct. 555, 89 L.Ed. 637 (1945); Manning v. John Hancock Mutual Life Ins. Co., 100 U.S. 693, 25 L.Ed. 761 (1879). This rule, it has been said, "does not extend to drawing an inference from an inference, or to permit a presumption to arise from a presumption." Parave v. Public Service Interstate, &c., Co., 109 N.J.L. 155, 161 (E. & A. 1932). In civil cases, this doctrine has been rejected. Jackson v. Delaware, Lackawanna & Western R.R. Co., 111 N.J.L. 487 (E. & A. 1933). Wigmore, in discussing the subject in general, refers to the rule as expressed in New York Life Ins. Co. v. McNeely, 52 Ariz. 181, 79 P.2d 948 (Sup. Ct. 1938), wherein the court, inter alia, said, "In criminal cases, they demand that when a conviction is to be based on a chain of inferences, each and every link in that chain must exclude every other reasonable hypothesis." 1 Wigmore, Evidence (3d ed. 1940), sec. 41, p. 438. See, also, United States v. Ross, 92 U.S. 281, 23 L.Ed. 707 (1875). Judge Jayne, speaking for this court in State v. Wilson, 23 N.J. Super. 539, 542 (App. Div. 1952), where the instructions to the jury respecting a permissible presumption was "fractional and incomplete," said:
"The jury was not informed that the presumption to which reference was made did not destroy the presumption of innocence and did not constitute a presumption of guilt.
*459 An instruction in this category delivered to a jury otherwise uninformed of the limitational and discriminative elements of the presumption has intrinsically a prejudicial tendency unless it is imparted with essential accuracy."
At the conclusion of the testimony with respect to the raid at No. 7 Coleman Avenue, the State rested; at the court's insistence, however, the case was reopened and the prosecutor proceeded with presentation of evidence respecting all three raids which were conducted coinstantaneously by the state and local police. At oral argument, in response to questions from the bench, counsel for the State on appeal, with admirable frankness, conceded that the prosecutor at the conclusion of the testimony respecting the raid at No. 7 Coleman Avenue had made out a prima facie case for the jury (without the necessity of exploring the details of the simultaneous raids at No. 11 Coleman Avenue and the saloon) and that the evidence respecting Cooper, the bartender, was incompetent and irrelevant. He argued, however, that the admissibility of such objectionable testimony was not reversible error in the light of the admissible evidence as revealed in the record.
We observe that the jury, after deliberating nearly six hours, returned for additional instructions concerning possession. Said the foreman: "* * * they want to know if possession is only on the person or in the house. Define `possession.'" The court properly defined "possession" in the technical language of the Labato case, supra, but the jury was left uninstructed on the vital issues of connection, inferences and constructive possession. We cannot speculate with the minds of the jury and what effect such inferences and the inadmissible testimony might have had upon their deliberations. "The object of an appeal is not to retry a case but to correct errors properly noted below." Roberts Electric, Inc., v. Foundations & Excavations, Inc., 5 N.J. 426, 432 (1950). It is not necessary to find plain error in the record under R.R. 1:5-1(a), since timely and specific objections were made by defendant's counsel. The *460 total record indicates that the defendant was prejudiced in maintaining his defense upon the merits and accordingly suffered manifest injury.
Reversed and remanded.