STATE OF NORTH CAROLINA v. DOUGLAS THORNTON

No. 56

(Filed 1 June 1973)

1. Criminal Law § 21— trial without preliminary hearing

The accused may be tried upon a bill of indictment without a preliminary hearing.

2. Criminal Law § 26; Narcotics § 5— conviction of possession and distribution of heroin — no double jeopardy

Possession of heroin and distribution of heroin are separate and distinct crimes, and each may be punished as provided by law; therefore, defendant was not subjected to double jeopardy when he was placed on trial for the two offenses and consecutive sentences were imposed for two convictions.

3. Criminal Law §§ 78, 163— jury charge — assignment of error to enlargement of stipulation — necessity for objection

The general rule that objections to the charge in stating the contentions of the parties or in recapitulating the evidence must be called to the court's attention in apt time to afford the opportunity for correction was not applicable in this case where defendant's assignment of error was addressed to the court's enlargement of a stipulation between the State and defendant which had been entered into evidence.

4. Narcotics § 4.5— stipulation of chemist's testimony — instruction assuming substance obtained from defendant was heroin

Where the State and defendant stipulated that a named SBI chemist analyzed one of three glassine envelopes turned over to him by Police Officer Fuller and the chemist was prepared to testify that the envelope contained heroin, but the trial court instructed that it was stipulated that the chemist analyzed the contents of one of the very envelopes bought from defendant by Officer Thompson and turned over to Officer Fuller, the trial court removed all doubt concerning a material fact the State was required to prove, i.e., whether the material eventually analyzed by the SBI chemist was part of the material defendant sold to Officer Thompson; therefore, defendant is entitled to a new trial based on the court's error in assuming the existence of a material fact in issue.

ON *certiorari* to the Court of Appeals to review its decision, 17 N. C. App. 225.

Defendant was tried on separate bills of indictment charging two violations of the North Carolina Controlled Substances Act on 18 March 1972: (1) distribution of heroin in violation of G.S. 90-95(a)(1), and (2) possession of heroin in violation of G.S. 90-95(a)(3).

State v. Thornton

After the jury was selected, sworn and empaneled, the following colloquy occurred among the solicitor, defense counsel, and the court:

"MR. BRANNON [the Solicitor] : Before we begin the evidence, it is my understanding that the State and the defendant in the trial of this case will stipulate that this item of paper which I would now like to mark for identification as Court's Exhibit One, or State's Ex. No. 1, as your Honor sees fit, is the laboratory report in this case from the State Bureau of Investigation Crime Lab, Raleigh, North Carolina, and that Mr. Neal C. Evans, a chemist in the field of forensic chemistry of the S.B.I. lab, analyzed one of the three glassine envelopes turned over to Mr. N. C. Evans by Mr. J. C. Fuller, and that this lab report reflects the examination of the first and the only one of the three glassine envelopes turned over and examined by Mr. N. C. Evans, and if he were called to testify he would testify that the one glassine envelope that he examined contained the schedule one substance heroin; is that correct?

"MR. LOFLIN [Defense Counsel] : That is correct.

"COURT: Is there any contention as to the credentials of Mr. Evans?

"MR. LOFLIN : No sir, there is not.

"COURT: Then it is stipulated by the State and the defendant that Mr. Evans is a chemist and qualified to testify as an expert in the field of chemistry, and if present would testify that he examined the contents of one of the three bags turned over to him as will appear from the chain of evidence, and that that bag contained a Category one substance, to wit: heroin."

The State's evidence tends to show that on 18 March 1972 at about 4:55 p.m. defendant sold three bags purporting to contain heroin for $30.00 to C. R. Thompson, a Durham Policeman acting at the time as an undercover agent. Officer Thompson had been introduced to defendant by a man named Willie Linwood Smith whose nickname was "Joe Baby." Joe Baby knew most of the people who were dealing in heroin, and he went from place to place in the City of Durham contacting these people, introducing the officer to them, and the officer would attempt to make purchases.

On 18 March about 4:55 p.m. Joe Baby and Officer Thompson went to an apartment building located at 311 LaSalle Street, known as Duke Manor Apartments. They had been there several times before. They entered an apartment and Joe Baby told defendant that Thompson wanted to buy three bags of heroin. "At this time Joe Baby and Doug Thornton went back in the back room, got out of the view of me, and stayed about two or three minutes, maybe not quite that long, then they came back and Doug had three bags in his hand. I gave him $30 and he gave me three bags of white powder. . . . I put the three bags in by left sock, because I wanted the people to think I was scared the man might try to stop me and search me or something like that. The 'man' is a slang expression for a police officer."

Officer Thompson further testified that he and Joe Baby left after the transaction; that he eventually took Joe Baby home and then went to his own residence and marked the little cellophane bags with his initials, the date and the time and then put the little bags in an envelope which he folded up and put in his billfold. On 21 March he turned the envelope and its contents over to Sergeant Ronald Cooper.

With respect to the three glassine bags of white powder allegedly purchased from defendant, Officer Thompson testified on direct and cross-examination as follows: "This was about 4:55 in the afternoon, and not 9:15 in the morning. I am absolutely sure of the time. I could have purchased some white powder that morning, I am not sure. During this time I was going to a number of places and making a number of purchases. I could have made some more purchases either before or after or both on this very same day, March 18. I am very sure that these white glassine envelopes are the very same the defendant Mr. Thornton gave me in return for some money because I wrote my initials, the date, and the time on this. . . . I can't recall how many little white powder envelopes I may have purchased at various places on March 18. What I would do if I would cop (purchase) heroin from more than one person, I would then initial the envelopes so I wouldn't get them confused with somebody else's. However, I didn't initial them until I got home. . . . I am not sure [which foot I put them in]. I think I put them in my left pocket though. I don't think I put them in my sock. I am not positive." Officer Thompson further said he was not sure he didn't buy more glassine envelopes after leaving defend-

ant's apartment but is "pretty sure" that the three glassine bags (State's Exhibits 2, 3 and 4) are the ones received from defendant in return for $30.00.

Sergeant Ronald Cooper testified that he received from Officer Thompson the three glassine bags, State's Exhibits 2, 3 and 4, in a large envelope (State's Exhibit 5). On March 22 he took the envelope out of his safe and gave it to J. C. Fuller to carry to the SBI lab for analysis.

Officer J. C. Fuller testified that he received from Sergeant Ronald Cooper on March 22 the large white envelope marked Exhibit 5, took it to Raleigh and delivered it to Chemist Neal Evans. He said he later received it back from the SBI lab in a large envelope (State's Exhibit 6) which, when opened, contained State's Exhibits 2, 3, 4 and 5, together with the lab report of the examination of one of the three bindles.

State's Exhibits 1, 2, 3, 4, 5 and 6 were offered and received into evidence without objection.

Defendant testified in his own behalf. He stated that the substance he sold to Officer Thompson was not heroin; that the three bags were "dummies," made up of milk, sugar and quinine; that these dummies were furnished by the police informer (Joe Baby) who accompanied the officer to the apartment; that sale of the dummies was a scheme originated by the informer, not the defendant, to trick Officer Thompson out of his money; that the $30.00 Thompson paid for the dummies was divided between the informer and the defendant.

Defendant admitted that he was a heroin addict of three or four years duration and that he had served time in Central Prison for common law robbery.

In rebuttal on behalf of the State, "Joe Baby" Smith testified that he had known defendant about six years; that he was working with the police department and took Officer Thompson to defendant's apartment on March 18; that Thompson said he wanted three bags of heroin, "so we gave the man three bags. Thompson gave Doug Thornton $30. Then we left."

This witness admitted on cross-examination that he began using heroin in the summer of 1971; that he got his supply from New York and brought large quantities of heroin back to Durham for purpose of sale; that he had pushers working for him

and had been arrested some five or six times on drug related charges; that he stopped using heroin after he started working with Officer Thompson. His testimony is rather equivocal regarding the alleged scheme related by defendant to sell Officer Thompson dummies and trick him out of his money, but he emphatically denied receiving from defendant any part of the $30.00 paid by Officer Thompson.

Defendant was convicted of both crimes charged in the two indictments and sentenced to imprisonment for a term of five years in each case, the sentences to run consecutively. On appeal, the Court of Appeals ordered a new trial for error in the charge and further held that defendant could not be convicted and punished under both bills of indictment because the possession and the distribution in point of time were the same and in law constituted only one crime. We allowed the State's petition for certiorari to review that decision. Errors urged by both the State and the defendant will be treated in the opinion.

*Robert Morgan, Attorney General; R. S. Weathers, Assistant Attorney General, for the State of North Carolina, appellant.*

*Loflin, Anderson, Loflin and Goldsmith by Thomas F. Loflin III, Attorneys for defendant appellee.*

HUSKINS, Justice.

Before pleading to the charges contained in the bills of indictment, defendant moved that both cases be remanded to the district court for a preliminary hearing. Denial of this motion constitutes defendant's first assignment of error.

[1] Defendant asks this Court to reexamine prior decisions holding that a preliminary hearing is not an essential prerequisite to a valid indictment. He argues that a mandatory preliminary hearing prior to indictment would result in a more realistic evaluation of the case by both prosecution and defense, and thus lead to more effective plea-bargaining and a consequent lessening of the case load. The argument is not persuasive. It is firmly established by a long line of cases that the accused may be tried upon a bill of indictment without a preliminary hearing. We adhere to our former rulings. *See State v. Foster,* 282 N.C. 189, 192 S.E. 2d 320 (1972); *State v. Bryant,* 282 N.C. 92, 191 S.E. 2d 745 (1972); *State v. Hartsell,* 272 N.C. 710, 158 S.E. 2d 785 (1968); *State v. Overman,* 269 N.C. 453, 153 S.E. 2d

44 (1967); *State v. Hargett,* 255 N.C. 412, 121 S.E. 2d 589 (1961); *State v. Hackney,* 240 N.C. 230, 81 S.E. 2d 778 (1954).

[2]  Defendant moved for judgment of nonsuit on the indictment charging illegal *possession* of heroin on the ground that any possession shown by the evidence was incidental to the transaction involving the alleged sale of the heroin and that it constitutes double jeopardy under both State and Federal Constitutions to place him on trial for two offenses and impose consecutive sentences for two convictions. We expressly held to the contrary in *State v. Cameron,* 283 N.C. 191, 195 S.E. 2d 481 (1973), and we reaffirm that ruling here. *Possession* of heroin and *distribution* of heroin are separate and distinct crimes and each may be punished as provided by law. The decision of the Court of Appeals is erroneous insofar as it sustains this contention.

After the jury was empaneled and before the introduction of evidence, the stipulation appearing in the statement of facts was agreed upon and entered of record. The trial judge in his charge, while recapitulating the State's evidence, characterized the stipulation as follows: " . . . Mr. Thornton went to the back room; . . . when he returned he had with him three bags of heroin, or three bags of some substance; . . . Thompson took the bags and paid to Mr. Thornton the sum of $30 and left. Now, it was stipulated at the outset of this trial that *that material,* or some of it, was analyzed by the State Bureau of Investigation, and that the chemist who is a duly qualified expert in the field of qualitative analysis, would testify if he were here that upon analysis of this material he found it to be the narcotic drug known as heroin. Now, what his findings would be is not in contest, so if I refer to the contents of the bags as heroin, I do so simply because there is no argument that that is what the analysis would show. We do that simply to avoid the necessity of bringing the chemist over here to say what he has written in a letter." (Emphasis added.) Defendant did not call this portion of the charge to the court's attention to afford the opportunity for correction but now assigns same as error.

[3]  "The general rule is that objections to the charge in stating the contentions of the parties or in recapitulating the evidence must be called to the court's attention in apt time to afford the opportunity for correction, in order that an exception thereto will be considered on appeal." 3 Strong N. C. Index 2d, Criminal

Law § 163 (1967) ; *State v. Gaines*, 283 N.C. 33, 194 S.E. 2d 839 (1973). However, the general rule does not apply here since defendant's assignment of error is not addressed to the court's recapitulation of evidence; rather, it is addressed to the court's enlargement of the stipulation. The stipulation itself "is not evidence, but rather removes the admitted fact from the field of evidence by formally conceding its existence." *State v. McWilliams,* 277 N.C. 680, 178 S.E. 2d 476 (1971), quoting Stansbury, *N. C. Evidence* § 166 (2d ed. 1963).

The stipulation in question, when stripped of unnecessary verbiage, simply states that Neal C. Evans, an expert in the field of forensic chemistry and employed by the SBI laboratory, analyzed one of the three glassine envelopes turned over to him by J. C. Fuller, which analysis showed that the envelope contained heroin; and that Mr. Evans would so testify if called as a witness. The stipulation does not state that any of the envelopes *bought from defendant* by Officer Thompson were among the glassine envelopes turned over to Mr. Evans by J. C. Fuller. It was left to the State to prove that fact, and the State offered ample evidence to show that the envelopes purchased from defendant were marked by Thompson with his initials, the date and the time and then turned over to Sergeant Ronald Cooper who delivered them to J. C. Fuller.

Notwithstanding such evidence, however, defendant elicited testimony tending to show that the glassine envelopes initially marked by Thompson were *not* those purchased from defendant. By cross-examination of Officer Thompson, defendant produced evidence tending to show the possibility of a "mix-up" resulting in a mislabeling of purchased glassine envelopes. On direct examination Officer Thompson testified that he put the envelopes purchased from defendant into his left sock; on cross-examination he said, "I think I put them in my left pocket." Thompson further testified on cross-examination that he did not mark the envelopes in question as being those purchased from defendant until "after I got home," and that "I can't recall how many little white powder envelopes I may have purchased at various places on March 18 . . . I didn't initial them until I got home." In addition, defendant testified that the envelopes he sold Officer Thompson were "dummies" containing only milk, sugar and quinine.

[4] Thus, defendant not only failed to concede that the envelope later found by the chemist to contain heroin was one of the en-

velopes purchased from him, he also affirmatively challenged the State's evidence that such was the case. In instructing the jury that it was stipulated that the chemist analyzed the contents of one of the very envelopes bought from defendant and found it to be heroin, the court removed all doubt concerning a material fact the State was required to prove. Such inadvertence on the part of the court effectively negated the paramount issue raised, *i.e.*, whether the material eventually analyzed by the SBI chemist was part of the material defendant sold to Officer Thompson. This unintentional expression by the court, which assumed the existence of a material fact in issue, was prejudicial error and entitles defendant to a new trial. The Court of Appeals correctly so held.

Other assignments concern matters not likely to arise again and, for that reason, they will not be discussed.

The decision of the Court of Appeals awarding defendant a new trial is modified to conform to this opinion and, as thus modified, affirmed.

Modified and affirmed.