STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
EDDIE RUIZ, DEFENDANT-APPELLANT.

STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
YVONNE WILLIAMS, DEFENDANT-RESPONDENT.

Argued September 24, 1974—Decided June 19, 1975.

*Mr. David A. Arrajj,* Assistant Deputy Public Defender, argued the cause for defendant-appellant Ruiz (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. Arrajj,* on the brief).

*Mr. David A. Faloni,* designated counsel, argued the cause for defendant-respondent Williams (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. Faloni,* on the brief).

*Mr. Richard W. Berg,* Deputy Attorney General, argued the cause for plaintiff-appellant and plaintiff-respondent, State of New Jersey (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Steven Leonard Strelitz* and *Mr. Robert A. Rubenfeld,* Deputy Attorneys General, on the briefs).

The opinion of the Court was delivered by

CLIFFORD, J. These consolidated cases present common questions of law, resolution of which is governed by the principles enunciated in *State v. Davis,* 68 *N. J.* 69 (1975), decided this day. The main issue in each case is whether the respective convictions for possession with intent to distribute heroin merged into the convictions for distribution thereof so as to require the possession-with-intent convictions to be vacated.

I

Defendant Ruiz was named in three separate indictments. The only one with which we are concerned charged that on June 13, 1972 Ruiz did unlawfully possess with intent to distribute (Count 1) and distribute (Count 2) heroin, contrary to *N. J. S. A.* 24:21–19(a)(1).

At trial Patrolman-Detective Botsko testified that on June 13, 1972 he was acting as an undercover agent for the Narcotics Squad of the Morris County Prosecutor's Office. In that capacity he and an informer approached a group of males standing around in a store area on the other side of South Essex Street in Dover. He was met halfway across the street by the defendant who shouted, as Botsko put it, that "he had the best dope on the street and him and another guy just copped [purchased] an ounce from New York." After some hastily begun, but unsuccessful, dickering as to what the revolver carried by the officer and initially eyed with suspicion by the group was worth in bags of heroin, Botsko asked how much money a pound bag would cost. The defendant replied $10. The detective then handed that amount to Ruiz, who left the scene and proceeded to an undisclosed location on a nearby street, returning about one minute later with a foil packet containing the white-powdered heroin. At that point Ruiz offered Botsko an additional four bags for the pistol but the officer refused. Defendant testified that he had never seen Botsko prior to the trial and denied selling him any heroin on June 13 or any other date. In affirming the convictions the Appellate Division, 127 *N. J. Super.* 350, 356 (1974), declared, *inter alia,* that the acts of possession with intent to distribute narcotics and the actual distribution thereof were distinct offenses and separately punishable. The case is here as of right, *R.* 2:2–1(a), by reason of a dissent which maintained that the possession with intent to sell the single bag or packet of heroin merged with distribution of the same bag.

## II

The fact pattern in the Williams case is relatively indistinct from that in Ruiz. Williams was accused in a six-count indictment of possession of a controlled dangerous substance (heroin) with intent to distribute and with unlawful distribution on three distinct dates in May, 1972, in contravention of *N. J. S. A.* 24:21–19(a)(1). The State concedes that the bag of heroin which is the subject of the distribution on each occasion is the same packet of heroin on which conviction was sought and secured for possession with intent to distribute on the same date. Once again an undercover member of a narcotics team — this time from the Monmouth County Prosecutor's Office — was the principal witness for the State. Investigator McLemore testified he had been introduced to the defendant at her apartment by one Ross, who in turn disclosed to Williams that the investigator wanted to purchase some drugs. In return for a five-dollar bill, defendant passed McLemore a white glassine bag later determined to contain heroin. During the next two meetings, which occurred within a week of the first, similar "buys" transpired. Yvonne Williams testified as the only witness in her behalf and denied ever having seen McLemore prior to the courtroom proceedings. While she admitted knowing Ross during May of 1972, she insisted she had not seen him on any of the days in question.

The jury found the accused guilty on all six counts. Defendant was sentenced on January 12, 1973 to an indeterminate period in the Correctional Institution for Women at Clinton on each count, the sentences to run concurrently with a ten-year maximum imposed. Upon appeal, the defendant argued that since the offense of possession of a controlled dangerous substance with intent to distribute merged as a lesser included offense in a distribution count involving the same bag of heroin, conviction on the lesser charges should be overturned. Defendant also averred (1) that the six offenses actually constituted but one transaction,

thus mandating conviction on only a single count, and (2) that the indeterminate sentences imposed with a ten-year maximum were excessive. While affirming the trial court's determination on the last two points for reasons which we find sufficient and hereby adopt, the Appellate Division, 129 *N. J. Super.* 84 (1974), agreed with defendant's first contention and vacated the convictions for possession with intent to distribute. In his perceptive and illuminating dissent, which furnishes the basis for the appeal as of right to this Court, Judge Lynch concluded that the convictions should be affirmed.

## III

Inasmuch as here, as in the companion case of *State v. Davis, supra,* there was no proof of possession of heroin other than that which was sold, defendants both argued that the convictions for possession with intent to distribute and distribution merge because one must necessarily possess the drug (with or without intent) in order to make distribution thereof.

But here again we are dealing with demonstrably distinguishable criminal offenses. *State v. Davis, supra,* 68 *N. J.* at 81–83 points up the differences between possession and distribution in terms of the stage of drug trafficking each represents and the time span characterizing each offense. So here we note that a charge of possession with intent to distribute in violation of *N. J. S. A.* 24:21–19(a)(1) seeks to condemn the transportation and placement of certain drug substances in the stream of illegal commerce, while an indictment for distribution looks to the final step in drug trafficking — transfer to someone else. There is, too, the same absence of coincidence of proof in law between the two offenses as exists with respect to simple possession and distribution.

Nor does the "mere fleeting and shadowy" possession exception of *State v. Booker,* 86 *N. J. Super.* 175 (App. Div. 1965), apply here any more than in *Davis.* Both Ruiz and

Williams did business with relative strangers. Williams sold the undercover agent drugs on three occasions. Clearly neither Ruiz nor Williams obtained possession of the heroin only at the behest of the agent. See *Laughler v. State, Miss.,* 241 *So.* 2d 641 (1970). Ruiz told the officer he had the "best dope" in Dover and had "just copped an ounce from New York," and thereafter tried to barter four packets of heroin for the detective's weapon. On each of the three occasions in question Williams, without any forewarning, supplied Detective McLemore with a white glassine bag of heroin which she had either on her person or in her apartment. With respect to both Ruiz and Williams the period of possession and of harboring the intention to distribute was substantial and significantly antedated each specific sale. The evidence in each case supported the separate convictions.

## IV

The judgment of the Appellate Division affirming the convictions of Ruiz is affirmed.

The judgment of the Appellate Division vacating the convictions of Williams for possession of heroin with intent to distribute it is hereby reversed and the convictions reinstated.

PASHMAN, J. dissenting. These cases and *State v. Davis,* 68 *N. J.* 69 (1975) and *State v. Jester,* 68 *N. J.* 87 (1975), also decided today, raise troublesome issues concerning the propriety of convicting and punishing defendants for both illegal distribution of controlled dangerous substances and illegal possession of such substances with intent to distribute where both offenses arise out of a single drug sale. The majority concludes that a defendant may be convicted and punished for both offenses. I disagree.

Eddie Ruiz made one sale of heroin to a police undercover agent. Based on that sale, he was convicted of both illegal

distribution of a controlled dangerous substance[1] and of illegally possessing such a substance with intent to distribute, both in violation of *N. J. S. A.* 24:21–19(a)(1). Yvonne Williams made three sales of heroin to a police undercover agent over the course of a week. She was convicted on counts of distribution and possession with intent to distribute for each sale, a total of six offenses.[2] In neither case did the State introduce any evidence of possession by the defendant of any narcotics other than those actually sold to the undercover agent.

*N. J. S. A.* 24:21–19 provides, in pertinent part:

a. Except as authorized by this act, it shall be unlawful for any person:

(1) To manufacture, distribute, or dispense, or to possess or have under his control with intent to manufacture, distribute, or dispense, a controlled dangerous substance;

\* \* \*

b. Any person who violates subsection a. with respect to:

(1) A substance classified in Schedules I or II which is a narcotic drug is guilty of a high misdemeanor and shall be punished by imprisonment for not more than 12 years, a fine of not more than $25,000.00, or both;

\* \* \*

The statute makes both distribution of heroin and possession of heroin with intent to distribute illegal. The offenses are distinct in that each includes essential elements not included in the other. *Jackson v. State*, 522 *P.* 2d 1356, 1359

---

[1] Heroin is classified as a schedule I controlled dangerous substance. *N. J. S. A.* 24:21–5(d)(11).

[2] In the Appellate Division defendant Williams also raised the issue of whether she could be separately convicted and punished for distribution for each of the sales. She has not cross-appealed from the portion of the lower court opinion rejecting that argument. *See Frank v. Frank*, 7 *N. J.* 225, 234–35 (1951). Although the Court could presumably consider that question anyway, *Kligman v. Lautman*, 53 *N. J.* 517, 523 (1969), it need not do so. I do not understand the majority opinion to have decided the issue, either expressly or *sub silentio*.

(Wyo. Sup. Ct. 1974); *cert*. den. 419 *U. S.* 1055, 95 S. Ct. 637, 42 *L. Ed.* 2d 652 (1974) (construing cognate provision of Wyoming controlled dangerous substances statute). Nevertheless, the two offenses are closely related. Possession with intent to distribute, which carries a greater penalty than simple possession, *N. J. S. A.* 24:21-20(a)(1), is specifically designed to facilitate prosecution of traffickers in narcotics and other dangerous drugs. It reaches precisely the same class of persons as the offense of distribution and gives the prosecutor seeking to bring the power of the State to bear against persons involved in the illegal drug trade an alternative ground for conviction where distribution itself cannot be proven.

It often happens that the facts which the State can prove suffice to support a conviction for possession with intent to distribute but would not support a conviction for distribution, *cf. State v. Reed,* 34 *N. J.* 554 (1961), but only rarely does the State find itself in a situation where the facts it can prove suffice to support a conviction for distribution but would not support a connection for possession with intent to distribute. In practice, the proofs which establish illegal distribution almost invariably also establish illegal possession by the seller of the drugs distributed.[3] Thus,

---

[3]"Possession" includes both actual and constructive possession. *State v. Reyes,* 98 *N. J. Super.* 506, 512 (App. Div. 1968), certif. denied 51 *N. J.* 582 (1968); *cf. State v. Brown,* 67 *N. J. Super.* 450, 454-55 (App. Div. 1961). It includes possession through an agent as well as physical possession by the defendant himself. *United States v. Hernandez,* 290 *F.* 2d 86, 90 (2 Cir. 1961); *United States v. Figueroa,* 337 *F. Supp.* 645 (S. D. N. Y. 1971). Courts have construed the concept very broadly. Thus, in *United States v. Hernandez, supra,* the U. S. Court of Appeals declared:

Physical custody by an employee or agent whom one dominates, or whose actions one can control, is sufficient to constitute such constructive possession by the principal. * * * Moreover, a person who is sufficiently associated with the persons having physical custody so that he is able, without difficulty, to cause the drug to be produced for a customer can also be found by a jury to have dominion and control over the drug, and therefore possession. [290 *F.* 2d at 90; citations omitted].

thè practical consequence of permitting a defendant to be convicted and punished for both distribution and possession of the drug distributed is that in the overwhelming majority of cases, conviction for illegal distribution automatically exposes the defendant not only to punishment for distribution but also to punishment for possession with intent to distribute incident to the distribution. The principal issue before the Court in these cases is whether constitutional principles and statutory law permit such defendants to be exposed to this type of double punishment.

The majority resolves this issue by finding in *N. J. S. A.* 24:21–19(a)(1) a legislative intent that where proofs support a conviction for distribution and also for possession with intent to distribute incident to the distribution, the defendant may be convicted and punished for both offenses. *State v. Davis, supra,* 68 *N. J.* at 82–83. Such an intent cannot, of course, be inferred from the language of the statute itself. While the prohibition in *N. J. S. A.* 24:21–19(a)(1) of both distribution and possession with intent to distribute might indicate a legislative intent that persons be convicted and punished for both offenses wherever possible, even when they arise out of the same transaction, *cf. Gore v. United States,* 357 *U. S.* 386, 390, 78 S. Ct. 1280, 2 L. Ed. 2d 1405 (1958), it might equally well indicate a legislative intention to give prosecutors a selection of variant legal theories with which to attack traffickers in drugs so as to insure that, insofar as possible, every case will succumb to at least one theory and that regardless of the theory that can be proven in any given case, the same punishment will result, *cf. Gore v. United States, supra,* at 393–

---

Except in the handful of cases in which the seller can demonstrate that he has legally acquired possession, such a standard means that almost everyone with the power to consummate a sale has sufficient "dominion and control" to be guilty of illegal possession. By excluding situations where the possession is merely "fleeting and shadowy," *State v. Davis, supra,* 68 *N. J.* at 77–80, the majority eliminates only the freakish and irregular case.

97, 78 S. Ct. at 1284–1286, 2 L. Ed. 2d at 1410–1412 (Warren, C. J. and Douglas, J. dissenting in separate opinions); *Edmond v. State,* 280 *So.* 2d 449, 450 (Fla. App. Ct. 1973), *cert.* den. 287 *So.* 2d 690 (Fla. Sup. Ct. 1973). Instead the majority seeks to find the purported legislative intent in the legislative history of the Controlled Dangerous Substances Act, *N. J. S. A.* 24:21–1 *et seq.*

The Controlled Dangerous Substances Act was adopted in 1970 as *L.* 1970, *c.* 226. It was loosely modeled on the Uniform Controlled Substances Act promulgated that year by the National Conference of Commissioners on Uniform State Laws. *N. J. S. A.* 24:21–19(a)(1) is, except for minor changes in language not pertinent here, essentially identical to Uniform Controlled Substances Act § 401(a). The official comments to the uniform act do not reveal whether the draftsmen intended to authorize conviction and punishment for both "delivery" and "possession with intent to deliver" in the present situation. Cases construing statutes in other jurisdictions based on this section of the uniform act have divided on the issue, *compare State v. Thornton,* 283 *N. C.* 513, 196 *S. E.* 2d 701 (Sup. Ct. 1973) (refusing to merge convictions); *People v. Stewart,* 46 *Mich. App.* 282, 207 *N. W.* 2d 907 (1973) (same) with *Jackson v. State, supra,* 522 P. 2d at 1359–1360 (merging convictions), and have found little guidance in the history or official commentary of the uniform act.

In adopting *N. J. S. A.* 24:21–19(a)(1), the Legislature had before it a great mass of materials on the problem of drug abuse; recommendations by the governor, Special Message by Governor Cahill to the Legislature, *Drug Abuse— Problem of the Decade!* (April 27, 1970), the various reports of the Narcotic Study Commission (established by Joint Res. No. 15 (1962)) including its final report, *Narcotic Study Comm'n, Final Report* (1967), comments by the United States attorney for the district of New Jersey, *Lacey, Recommendations to the 1970 Session of the New*

*Jersey Legislature Concerning Legislation Which Might Be Enacted to Curb the Power and Influence of Organized Crime in New Jersey* (1970); and a variety of reports prepared by various state and federal agencies, *e. g., N. J. State Law Enforcement Program Assistance Agency, Staff Report: Desk Book on Drug Abuse* (1969). In addition, joint hearings were held before the relevant Senate and Assembly committees at which considerable expert testimony on legislative strategies against drug abuse and drug traffic was presented.

A review of this voluminous legislative history reveals a strong concern for the very serious and thoroughly documented problem of traffic in narcotic drugs and a general intent to punish traffickers more severely than mere users (an intent realized by establishment of a maximum penalty of five years imprisonment and $5,000 fine for simple possession, *N. J. S. A.* 24:21–20(a)(1), and of a maximum penalty of 12 years imprisonment and $25,000 fine for distribution or possession with intent to distribute, *N. J. S. A.* 24:21–19(b)(1)), but it nowhere reveals any intention, expressed or implied, to authorize conviction and punishment for both distribution and possession with intent to distribute arising out of the same sale as in the present cases. The legislative intent which the majority purport to infer from the statute and its legislative history is not to be found in those sources at all. The majority have simply imputed to the Legislature their own notions as to what policy the Legislature should have adopted.

We are thus not confronted, as the majority appear to suggest, with the task of determining whether a clear and unequivocal legislative intent can be reconciled with constitutional limitations upon legislative power, but with the task of choosing between alternative interpretations of ambiguous statutory language where the Legislature has expressed no pertinent intent at all. In such circumstances, it is not the proper function of the judiciary to make its own

policy judgments and baldly attribute them to the silent Legislature. Where the Legislature has not unequivocally spoken, courts are bound to look to the general principles upon which our system of criminal law is founded for their guidance.[4]

In my opinion, the proper course in this situation is to presume that the Legislature did not intend the language of *N. J. S. A.* 24:21–19(a)(1) to be used to automatically double the sentence that could be imposed upon a person convicted of distribution of a controlled dangerous substance, but instead intended to give prosecutors an alternative ground for conviction of persons engaged in trafficking

---

[4]If it were proper for us to enter into the exercise of imputing intent to the Legislature, the logic of the Controlled Dangerous Substances Act would seem to me to make it more reasonable to reach a result precisely opposite to that reached by the majority. It would seem to me that the Legislature has treated possession with intent to distribute, *N. J. S. A.* 24:21–19(a)(1), differently from and more harshly than simple possession, *N. J. S. A.* 24:21–20(a)(1), because possession with intent to distribute is a preparatory step toward the more serious offense of distribution. A number of scholarly articles have argued that this is a case in which it is peculiarly appropriate to impute an intent that the convictions merge. Kirchheimer, "The Act, the Offense, and Double Jeopardy," 58 *Yale L. J.* 513, 518–22 (1948) ; Comment, 75 *Yale L. J.* 262, 318–21 (1965). This view was adopted by the draftsmen of the Model Penal Code:

Section 1.07. Method of Prosecution When Conduct Constitutes More Than One Offense.

(1) *Prosecution for Multiple Offenses: Limitation on Convictions.* When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:

\* \* \*

(b) one offense consists only of a conspiracy or other form of preparation to commit the other;

[ALI, *Model Penal Code* § 1.07(1)(b) (Proposed Official Draft (1962)].

The same language has also been incorporated into the proposed New Jersey Penal Code, 1 *New Jersey Criminal Law Revision Commission, The New Jersey Penal Code* § 2C:1–7(a)(2) at 7 (1971), which is now pending before the Legislature as Assembly Bill No. 3282.

in narcotics, where for some reason distribution itself cannot be proven. Hence where a defendant is convicted of distribution of specifically identified drugs, a conviction for possession with intent to distribute of those same drugs cannot also be permitted to stand but must be deemed to have merged into the conviction for distribution.

The application of two important principles requires this construction. The first is the principle, recognized by the majority, *State v. Davis, supra*, 68 *N. J.* at 76–78 that a person may not be twice punished for the same offense. This is a principle with deep roots both in the common law and in the state and federal constitutions. *See State v. Jamison*, 64 *N. J.* 363, 380 (1974) ; *State v. Hill*, 44 *N. J. Super.* 110 (App. Div. 1957) ; *North Carolina v. Pearce*, 395 *U. S.* 711, 717–18, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) ; *Ex parte Lange*, 18 *Wall.* 163, 173, 21 L. Ed. 872 (1874). *But see Price v. Georgia*, 398 *U. S.* 323, 326, 90 S. Ct. 1757, 26 L. Ed. 2d 300 (1970) ; *Holiday v. Johnston*, 313 *U. S.* 342, 349, 61 S. Ct. 1015, 85 L. Ed. 1392 (1941). *See generally* Note, 65 *Yale L. J.* 339 (1956). We need not consider here whether this principle in its constitutional aspect would bar the Legislature from authorizing by specific statutory enactment conviction and punishment for both distribution and possession with intent to distribute in the factual context of the present cases. In the absence of any such clear legislative enactment we should be guided by the principle in its broadest and most humane form. The proper application of this principle was declared in the early case of *State v. Cooper*, 13 *N. J. L.* 361, 372 (Sup. Ct. 1833) : "If the whole offense, in the eye of reason and philosophy is one \* \* \*, we ought not to presume that the legislature meant to punish it as two." *Accord Gore v. United States, supra*, 357 *U. S.* at 393–97, 78 S. Ct. at 1280 (Warren, C. J. and Douglas, J. dissenting in separate opinions) ; *cf. Edmond v. State, supra*.

The second is the familiar principle that penal statutes are to be construed strictly against the State. *State v. Fair Lawn Service Center, Inc.,* 20 *N. J.* 468, 472 (1956) ; *State v. Cannizzaro,* 133 *N. J. L.* 383, 384 (E. & A. 1945) ; *State v. Woodruff,* 68 *N. J. L.* 89, 93 (Sup. Ct. 1902) ; 3 *Sutherland, Statutory Construction,* § 59.03 at 6–8 (Sands ed. 1974). The proper application of this principle to the present situation is nowhere better explained than by Justice Frankfurter in *Bell v. United States,* 349 *U. S.* 81, 82–84, 75 S. Ct. 620, 622, 99 L. Ed. 905 (1955) :

> Congress could no doubt make the simultaneous transportation of more than one woman in violation of the Mann Act liable to cumulative punishment for each woman so transported. The question is: did it do so? It has not done so in words in the provisions defining the crime and fixing its punishment. Nor is guiding light afforded by the statute in its entirety or by any controlling gloss.
>
> \* \* \*
>
> It is not to be denied that argumentative skill, as was shown at the Bar, could persuasively and not unreasonably reach either of the conflicting constructions. About only one aspect of the problem can one be dogmatic. When Congress has the will it has no difficulty in expressing it — when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or antisocial conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read. Nor does it assume that offenders against the law carefully read the penal code before they embark on crime. It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes.

*Accord, Ladner v. United States,* 358 *U. S.* 169, 79 S. Ct. 209, 3 L. Ed. 2d 199 (1958) ; *Prince v. United States,* 352

*U. S.* 322, 77 S. Ct. 403, 1 L. Ed. 2d 370 (1957) ; *United States v. Universal C. I. T. Credit Corp.,* 344 *U. S.* 218, 73 S. Ct. 227, 97 L. Ed. 260 (1952). *See generally* Comment, 75 *Yale L. J.* 262, 313–17 (1965).

The majority places heavy reliance on *Gore v. United States, supra.* That reliance is inappropriate. In *Gore,* Justice Frankfurter found a clear and unequivocal Congressional intent that the government be permitted to convict and punish a defendant for each of the several statutorily based offenses arising out of a sale of narcotics. His analysis of the Congressional intent behind the federal narcotics statutes has been questioned, and perhaps justly so, *e. g.,* Note, 67 *Yale L. J.* 916, 927–29 (1958) ; but, accepting his statutory interpretation at face value, as we must, the case is entirely different from the ones presently before this Court, in which no unequivocal legislative intent can be divined. Furthermore, even as a matter of federal law, the continuing validity of *Gore* is doubtful. In *Yancy v. United States,* 252 *F.* 2d 554 (6 Cir. 1958), Judge (later Justice) Stewart very sharply criticized the holding in *Gore* and strongly urged that it be overruled, although he felt obliged by *Gore* to sustain the multiple convictions in the case before him. In a brief *per curiam* opinion, the Supreme Court affirmed *Yancy* by an equally divided court. 362 *U. S.* 389, 80 S. Ct. 811, 4 L. Ed. 2d 864 (1960). The missing vote was that of Justice Stewart, who had properly disqualified himself from reviewing his own decision below.

The seriousness of the problem of drug abuse is beyond question. There is a strong and well-justified public demand for stern law enforcement measures against those who deal in drugs. These circumstances, however, do not warrant our ignoring sound principles which underpin our system of criminal law. In these cases, the convictions for possession with intent to distribute should be deemed to have merged into the convictions for distribution and should, therefore, be vacated. I would reverse the decision of the Appellate

Division in *State v. Ruiz* and would affirm in *State v. Williams.*

For affirmance in *State v. Ruiz*—Chief Justice HUGHES, Justices SULLIVAN and CLIFFORD and Judge KOLOVSKY—4.

For reversal—Justice PASHMAN—1.

For reversal in *State v. Williams*—Chief Justice HUGHES, Justices SULLIVAN and CLIFFORD and Judge KOLOVSKY—4.

For affirmance—Justice PASHMAN—1.