STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. CARL ALEXANDER DAVIS, DEFENDANT-APPELLANT.

Argued September 24, 1974—Decided June 19, 1975.

70

*Mr. Carl R. Lobel* and *Mr. David A. Arrajj,* Assistant Deputies Public Defender, argued the cause for defendant-appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Messrs. Lobel and Arrajj* on the brief).

*Mr. Richard W. Berg,* Deputy Attorney General, argued the cause for plaintiff-respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Berg* on the brief).

The opinion of the Court was delivered by

CLIFFORD, J. In *State v. Gregory,* 66 *N. J.* 510 (1975), this Court recently focused on the problem of procedural joinder of multiple offenses based on the same conduct or arising from the same criminal episode — in that case (1) possession with intent to distribute and (2) distribution of heroin. We held that under the situation there presented, considerations of fundamental fairness called for disposition by a single trial. Justice Jacobs' opinion for a unanimous Court made passing reference, in 66 *N. J.* at 522, to a somewhat related issue now squarely presented, namely, under what circumstances possession and distribution (here, again, of heroin) may be viewed as separate offenses.

Broadly stated, this case and its companion cases of *State v. Ruiz,* A–56, *State v. Williams,* A–57, 68 *N. J.* 54 (both argued with the instant matter) and *State v. Jester,* A–64, 68 *N. J.* 87, all decided this day, involve the asserted merger of related violations of New Jersey's Controlled Dangerous Substances Act, *N. J. S. A.* 24:21–1 *et seq.,*[1] arising from a single multi-count indictment.

---

[1]At all times pertinent hereto the sections of the Act read in part as follows:

24:21–19. Prohibited acts A. — Manufacturing, distributing or dispensing — Penalties

a. Except as authorized by this act, it shall be unlawful for any person:

(1) To manufacture, distribute, or dispense, or to possess or have under his control with intent to manufacture, distribute, or dispense, a controlled dangerous substance;

\* \* \* \* \* \* \* \*

b. Any person who violates subsection a. with respect to:

(1) A substance classified in Schedules I or II which is a narcotic drug is guilty of a high misdemeanor and shall be punished by im-

The principles governing consideration of all four cases will be developed in this opinion and applied to the factual situations in this and the companion cases.

## I

Three indictments charged Davis with criminal violations on three separate dates. Each indictment, containing two counts, accused defendant of unlawful possession (Count 1) and unlawful sale (Count 2) of a narcotic drug (heroin). A jury trial resulted in convictions on all six counts. In March of 1972 defendant was sentenced on each count to concurrent 12-to 15-year terms in New Jersey State Prison.[2]

prisonment for not more than 12 years, a fine of not more than $25,000.00, or both;

\* \* \* \* \* \* \* \*

24:21–20. Prohibited acts B. — Possession, use or being under influence — Penalties

a. It is unlawful for any person, knowingly or intentionally, to obtain, or to possess, actually or constructively, a controlled dangerous substance unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by this act. Any person who violates this section with respect to:

(1) A substance classified in Schedule I or II which is a narcotic drug and any other controlled dangerous substance classified in Schedule I, II, III, or IV is guilty of a high misdemeanor and shall be punished by imprisonment for not more than 5 years, a fine of not more than $15,000.00, or both, except as provided in subsection a. (3) below:

\* \* \* \* \* \* \* \*

(3) Possession of more than 25 grams of marihuana, including any adulterants or dilutents, or more than 5 grams of hashish is guilty of a high misdemeanor and shall be punished by imprisonment for not more than 5 years, a fine of not more than $15,000.00, or both; provided, however, that any person who violates this section with respect to 25 grams or less of marihuana, including any adulterants or dilutents, or 5 grams or less of hashish is a disorderly person.

---

[2] Sentence was rendered under the now-repealed Uniform Narcotic Drug Law, L. 1966, c. 313, § 29 (repealed 1971). Defendant does not seek to distinguish this statute from its successor Controlled Dangerous Substances Act on the issue of merger and, in fact, relies

While his appeal from these convictions and sentences was pending, Davis moved before the trial court, pursuant to *R.* 3:21–10(a), for transfer from State Prison to a narcotics treatment center. The original sentences and the denial of that motion were affirmed by the Appellate Division. A petition for certification raising both issues anew was granted, as was a supplemental letter petition raising for the first time the question of whether there should not be merger of the possession counts with those involving sale.

## II

The convictions were founded largely upon the work of one Detective Teza, an undercover agent for the New Jersey State Police. Defendant sold him heroin on three different occasions in Trenton during a five-week period in 1969. At the initial meeting the undercover detective arrived by car with an informer who was familiar with the neighborhood and its inhabitants. His function was to introduce Teza and, by his presence, reduce suspicion. While Teza and the informer were seated in the parked automobile, they encountered defendant on the sidewalk and struck up a conversation. After a few moments Davis entered the vehicle. While seated in the back seat defendant stated that he had "pound bags" (*i. e.*, glassine bags containing one-tenth of a gram of heroin) for sale. Then and during the next two meetings — each conducted under circumstances similar to the first but without the presence of the informer — Detective Teza purchased for $10 a single "pound bag." No additional proof was adduced relating to possession of heroin other than that amount sold the agent. Nor was the alleged possession more specifically delineated in the indictment than defendant "unlawfully did possess and have under his control * * * heroin."

on a number of unreported decisions construing the latter as determinative. Thus, for the purposes of merger of offenses, the two statutory formulations will be treated as the same. See *State v. Reed,* 34 *N. J.* 554 (1961) ; *State v. Booker,* 86 *N. J. Super.* 175 (App. Div. 1965).

## III

There is posed, in this and the companion cases, a preliminary question: whether indictment and conviction in a single proceeding for either possession of or possession with intent to distribute a controlled dangerous substance, such as heroin, and distribution of the same controlled dangerous substance, comes within the ambit of merger incorporated in the double jeopardy provisions of the state and federal constitutions,[3] or rather is governed by considerations of merger in conjunction with due process. While the double jeopardy bar typically falls upon repeated piecemeal prosecution, here we are confronted in a single-trial context with asserted multiple punishment arising from convictions based on a multicount indictment with each count therein allegedly setting forth the same offense.

The issue thus projected, of whether the double jeopardy clauses may or should be expanded beyond their traditional scope, is a stimulating one and has an undeniable intellectual attraction; but it need not be pursued here inasmuch as the members of the Court who vote with this opinion in this the "lead" case are not of one mind on the question of whether it is double jeopardy or substantive due process that is to be applied. We therefore leave to another day protracted discussion and resolution thereof.[4]

---

[3]The state prohibition against twice placing an individual in jeopardy is contained in Article I, ¶ 11, of the New Jersey Constitution. The federal double jeopardy clause in the Fifth Amendment was made applicable to the states through the Fourteenth Amendment in *Benton v. Maryland*, 395 *U. S.* 784, 89 S. Ct. 2056, 23 *L. Ed.* 2d 707 (1969).

[4]Whether a second trial is a prerequisite to the availability of the defense of double jeopardy seems to remain unresolved in federal courts as well. Compare *Ex Parte Lange*, 85 *U. S.* (18 Wall.) 163, 173, 21 *L. Ed.* 872, 876 (1874) and *North Carolina v. Pearce*, 395 *U. S.* 711, 717–18, 89 S. Ct. 2072, 2076–2077, 23 *L. Ed.* 2d 656, 665 (1969), with *Holiday v. Johnston*, 313 *U. S.* 342, 349, 61 S. Ct. 1015, 1017, 85 *L. Ed.* 1392, 1396 (1941). Considerable discussion

■ We are, however, in complete accord on this fundamental point: If an accused has committed only one offense, he cannot be punished as if for two. Hence, we reaffirm the prohibition against multiple punishment for a single wrongdoing. See *State v. Jamison,* 64 *N. J.* 363, 380 (1974); *State v. Hill,* 44 *N. J. Super.* 110 (App. Div. 1957); *cf. State v. Labato,* 7 *N. J.* 137, 143 (1951); *State v. Roller,* 29 *N. J.* 339, 346–47 (1959). Such a proscription not only tends to insure that the punishment imposed is commensurate with the criminal liability, by limiting judges and prosecutors alike to acting within the bounds of the legislative design; but it also addresses the inevitable conflict between legislative attempts to stuff all kinds of anti-social conduct into the general language of a limited number of criminal offense categories, and the legislative desire not to be inordinately vague about what behavior is deemed "criminal." And for today's purposes it makes no difference whether it be by force of double jeopardy, substantive due process, or some other legal tenet that double punishment in the circumstances before us is forbidden.

## IV

■ Nonetheless, with whatever disarming ease the prohibition against double punishment may be articulated, its application is not without difficulties. We start with the proposition that what is disallowed is double punishment for the same offense. Since it is the legislative branch that defines the unit of prosecution or "offense" and ordains its punishment, *United States v. Wiltberger,* 18 *U. S.* (5 Wheat.)

---

has been provoked by this issue in the law reviews, and the curious may profitably examine the following: Caraway, "Pervasive Multiple Offense Problems — A Policy Analysis," 1971 *Utah L. Rev.* 105; Note "Consecutive Sentences in Single Prosecutions: Judicial Multiplication of Statutory Penalties," 67 *Yale L. J.* 916 (1958); Comment, "Statutory Implementation of Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee," 65 *Yale L. J.* 339 (1956); Comment, "Twice in Jeopardy," 75 *Yale L. J.* 262 (1965).

76, 95, 5 *L. Ed.* 37, 42 (1820), we must first determine whether the legislature has in fact undertaken to create separate offenses of, in this case, (a) possession and (b) sale of narcotic drugs in situations where that possession and sale are exposed in the same criminal episode.

■ We approach this examination with an awareness that while a court need not automatically accept the legislative enactment as controlling on the question of whether or not separate offenses have been delineated, the legislature may, nevertheless, within its constitutional authority, devise reasonable means to combat a social evil such as illegal trafficking in drugs and may endeavor to deter the recurrence of the proscribed conduct. Specifically, there is no question but that the legislature is empowered to split a single, continuous transaction into stages, elevate each stage to a consummated crime, and punish each stage separately. See *State v. Cormier,* 46 *N. J.* 494, 501–02 (1966) ; *Burton v. United States,* 202 *U. S.* 344, 377–78, 26 S. Ct. 688, 697, 50 *L. Ed.* 1057, 1069–070 (1906) ; *United States v. Nathan,* 476 *F.* 2d 456, 459 (2d Cir.), *cert. den.,* 414 *U. S.* 823, 94 S. Ct. 171, 38 *L. Ed.* 2d 56 (1973) ; *cf. United States v. Campos-Serrano,* 404 *U. S.* 293, 298, 92 S. Ct. 471, 474, 30 *L. Ed.* 2d 457, 462 (1971).

■ We conclude that as part and parcel of a comprehensive strategy to deal with the drug crisis, the legislature intended each of certain specified components of a transaction or episode leading to and including the distribution of a controlled dangerous substance to be a distinct and separate offense. See Judge Lynch's dissent in *State v. Williams,* 129 *N. J. Super.* 84, 87, 91–96 (App. Div. 1974). As emphasized in *Gore v. United States,* 357 *U. S.* 386, 390, 78 S. Ct. 1280, 1283, 2 *L. Ed.* 2d 1405, 1409 (1958), wherein the Supreme Court was confronted with several drug-related offenses proscribed by a series of congressional enactments, the legislative effort in "grappling with a powerful, subtle and elusive enemy" which invades even the schoolgrounds of ghetto and suburb

alike must, to the greatest extent possible, be given consideration and effect by this Court. In that endeavor it behooves us to be sensitive to the "spirit of the legislative direction," and not blindly follow "the literal sense of the terms." *Alexander v. N. J. Power & Light Co.,* 21 *N. J.* 373, 378 (1956).

The 1960's witnessed a tremendous increase in drug arrests: in New Jersey, from 1618 arrests in 1964 to 22,941 during 1970. *Narcotic Drug Study Comm'n of the N. J. Legislature, An Interim Report 1965,* at 14, 36 (1966); *Uniform Crime Reports, State of New Jersey 1970,* at 62 (1971).[5] Simultaneously with the attempt to forge a new program for the rehabilitation of addicts, the legislature proposed to direct law enforcement activities against both small-time and organized-crime-linked narcotics vendors and suppliers who reprehensibly sought to reap profits for whatever motive — even to feed their own habit — at the cruel expense of others' moral and physical well-being. See F. B. Lacey, *Recommendations to the 1970 Session of the N. J. Legislature concerning Legislation Which Might Be Enacted to Curb the Power and Influence of Organized Crime in New Jersey* 47 (1970); *Narcotic Drug Study Comm'n of the N. J. Legislature, Final Report 1967,* at 6–7 (1969). Those who systematically engage in the drug trade were to be disciplined severely.[6] Moreover, the possibility of cumula-

---

[5] For purposes of accuracy, it should be noted that the arrest groups on which the figures for the two years are based do not exactly mesh. The 1964 figure is comprised of 1374 narcotic arrests (excluding arrests made by the Federal Bureau of Narcotics) and 244 dangerous drug arrests (excluding Juvenile Court arrests). The table in *Uniform Crime Reports* makes no reference to any possible exclusions. Thus the 1964 figure is probably deflated as compared with the 1970 tally. But even if the addition of Federal Bureau of Narcotics and Juvenile Court arrests should double the 1964 figure, the comparison with 1970 is nonetheless astounding.

[6] The legislative and executive efforts continue in that direction. On March 7, 1975, Governor Byrne signed a bill, *L.* 1975, *c.* 31, amending *N. J. S. A.* 24:21–19 & 20, providing for sentences of up

tive penalties for pushers and suppliers in the proper case is an appropriate response to the social harm caused and havoc wreaked by such activity. Thus, no rule of lenity is disclosed in the legislative history. *Cf.* Special Message to the Legislature by Governor Cahill, *Drug Abuse — Problem of the Decade!* 8–9, April 27, 1970. As observed by Mr. Justice Frankfurter, in similar circumstances, "[i]f the legislation reveals anything, it reveals the determination of Congress to turn the screw of the criminal machinery — detection, prosecution, and punishment — tighter and tighter." *Gore v. United States, supra,* 357 *U. S.* at 390, 78 S. Ct. at 1283, 2 *L. Ed.* 2d at 1409. See *Blockburger v. United States,* 284 *U. S.* 299, 52 *S. Ct.* 180, 76 *L. Ed.* 306 (1932); *Harris v. United States,* 359 *U. S.* 19, 79 *S. Ct.* 560, 3 *L. Ed.* 2d 597 (1959). Buttressing this analysis is not only the disjunctive phrasing of *N. J. S. A.* 24:21–19(a)(1), but also the separation of the simple possession terminology of *N. J. S. A.* 24:21–20 from *N. J. S. A.* 24:21–19(a)(1)'s possession with intent — distribution provisions.

 ██ Of course, determination of the statute's purposes as revealed in the legislative history does not end the examination of what is the "same offense." Were the legislature, in attempting to create separate crimes, to do no more than simply apply different labels to what is in fact the same charge, it would plainly exceed its authority. But on the face of it, and tested "in the eye of reason and philosophy," *State v. Cooper,* 13 *N. J. L.* 361, 372 (Sup. Ct. 1833), the offenses described in the statutes under consideration are separate and distinct. *Cf. Gore v. United States, supra,* 357 *U. S.* at 392, 78 S. Ct. at 1284, 2 *L. Ed.* 2d at 1410.

---

to life imprisonment, a fine of not more than $25,000, or both, for persons convicted of manufacturing or distributing hard drugs such as heroin or cocaine in a quantity of one ounce or more including at least 3.5 grams of the pure narcotic. The maximum penalty for possession of more than an ounce of hard drugs is increased from five to seven years.

The next step, then, is to determine whether, despite the clear signal in the multi-count indictment that the defendants in the cases before us must answer what are denominated as two or more separate charges, nevertheless they can of necessity be convicted of but one crime by application of one of the "offense-defining" tests for "sameness." In *State v. Gregory, supra,* Justice Jacobs examined at some length the authorities in support of the "same evidence" test and the "same transaction" test; and from that discussion it seems apparent that a narrow or mechanical application of either test (or variants thereof, *i. e.,* the "lesser-included-offense" form of the "same evidence" test) may well result in either harassment of a defendant or frustration of both the legislative intent and the function of law enforcement. While a distinct, non-mechanical standard for determining the existence of the same or separate offenses would be most desirable, we recognize the elusive character of that goal and the probable futility of our efforts to achieve it.

As a practical matter, however, it may be helpful to employ a certain flexibility of approach to the inquiry of whether separate offenses have been established under the proofs, attended by considerations of "fairness and fulfillment of reasonable expectations in the light of constitutional and common law goals." *State v. Currie,* 41 *N. J.* 531, 539 (1964). Such an approach would entail analysis of the evidence in terms of, among other things, the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed. Certainly there are other factors to be considered and, along with the above, accorded greater or lesser weight depending on the circumstances of the particular case. We mean to emphasize that by referring to

these elements we do not intend either to create exclusive categories of evidence which may be of critical significance or to shroud the analytical process in any mystery. In reality we are simply reflecting, in the context of these cases, on the traditional determination of sufficiency of proofs.[7]

## V

In the instant case the argument is that since there was no evidence of possession other than of the heroin packets sold, and since one must indeed possess the drug in order to sell it, possession and distribution must necessarily merge under these facts.

██ ██ This argument, while attractively short, is unconvincing. First, it ignores the core of conduct and the mental element which each of the designations "possession" and "distribution" denotes. See *State v. Booker*, 86 *N. J. Super.* 175 (App. Div. 1965). Possession signifies intentional control and dominion, the ability to affect physically and care for the item during a span of time. *State v. Labato, supra,* 7 *N. J.* at 148. Sale is momentary or immediate in nature. Distribution and possession are distinct criminal offenses, not only in terms of the length of time each lasts, but also in terms of what particular stage of drug trafficking each represents: simple possession under *N. J. S. A.* 24:21-20(a) looks to acquisition and retention by a possessor of a controlled dangerous substance whether he be seller or user; distribution concentrates on the final transfer to a particular party.

---

[7]Nothing in the merger provisions of the proposed New Jersey Penal Code, 1 *N. J. Criminal Law Revision Comm'n, The New Jersey Penal Code* § 2C:1-7, at 7-8 (1971), would affect our analysis of what is the "same offense." As discussed more fully *infra*, each stage of the drug trade — possession, marketing, and ultimate distribution — typically denotes separate and distinct conduct. Thus, none of the five instances outlined in 2C:1-7(a) and developed in the Commentary thereto in 2 *N. J. Criminal Law Revision Comm'n, The New Jersey Penal Code* 18-20 (1971), prohibits the convictions upheld in this and the companion cases decided today.

■ Furthermore, there is no coincidence of proof in law. Evidence of illegal possession certainly does not prove, nor is it necessary for the proof of, unlawful sale or distribution. Nor does unlawful sale necessarily prove unlawful possession, for one may legally obtain possession of a controlled dangerous substance as a registered manufacturer or dispenser or from a prescribing practitioner. *E. g., N. J. S. A.* 24:21-10(b) & 21-15(f). See generally *Albrecht v. United States,* 273 *U. S.* 1, 11, 47 S. Ct. 250, 253, 71 *L. Ed.* 505, 511 (1927); *Blockburger v. United States, supra,* 284 *U. S.* at 301-03, 52 S. Ct. at 181, 76 *L. Ed.* at 308; *State v. Cameron,* 283 *N. C.* 191, 198-202, 195 *S. E.* 2d 481, 486-88 (1973).

■ One caveat is to be noted. We recognize, as did the Appellate Division in *State v. Booker, supra,* that if possession were contingent upon and inseparable from the sale itself, a "mere fleeting and shadowy incident of the sale," then only one offense has been committed. Illustrative of this merger is *Laughter v. State, Miss.* 241 *So.* 2d 641 (1970). There the defendant procured marijuana at the request of an undercover agent who had given defendant money with the express intent of consummating a sale to the agent. Defendant was prosecuted and convicted for possession of marijuana. He was subsequently prosecuted in a second trial for sale to the agent of the same marijuana. In stating that the possession for which there had already been a conviction was inextricably tied to that sale, the Supreme Court of Mississippi reversed the conviction for sale, holding that prosecution therefor was barred by the earlier proceeding. That court hastened to add, however, that if defendant had, after an offer to purchase from the agent, gone to a location where the same amount of marijuana was concealed and then sold it to the officer, both convictions would be sustained. *Id.* at 644.

■ The record, here, however, discloses ample evidence to support the conclusion that Davis was not engaged

in "fleeting and shadowy" possession preceding and purely incidental to imminent distribution, as would be true of an agent of or go-between for a seller, but was rather in possession for a substantial period of time separate and apart from his possession merely incident to a particular imminent sale. Davis was approached by a relative stranger to whom he was willing to sell heroin on a number of occasions. No drug was procured by defendant specifically for the undercover agent. Davis — a seller and user — acknowledged to the agent that he had "pound bags" for distribution.[8] Under the circumstances there was no merger of possession with the sale of the same drugs; therefore, the convictions are properly upheld.

## VI

Defendant challenges the trial court's denial of his motion to be transferred to a methadone treatment program as authorized by *N. J. S. A.* 2A:168–1 and *R.* 3:21–10(a). There was a recommendation from one of the program's personnel that Davis be accepted as an appropriate subject of methadone maintenance. It is also the public policy of New Jersey, *N. J. S. A.* 30:6C–1, to provide for rehabilitation of drug addicts in the hope that they "may be restored to good health

---

[8]This evidence is important *not* in furnishing some hint of possession of heroin in amounts beyond that which was sold, but rather in its clear implication that the character of the "possession" is other than "fleeting and shadowy." Since there was no testimony or other evidence demonstrating the possession of more than was distributed 68 *N. J.* 87 (as is the situation in the companion case of *State v. Jester*, A–64), neither the court nor the jury should be required to indulge in undue speculation when more specific evidence, if any, lies within the power of the prosecution to produce. In prosecutions similar to those involved in these companion cases the State should, if at all possible, not only specify with particularity the quantity of drug for possession of which conviction is sought, as well as the specific quantity distributed, but also identify the actual "goods" in each instance. As these cases now make clear there is no bar in law to convictions for possession (with or without intent) and distribution of precisely the same drug, with or without an unused residue.

and again become useful citizens in the community." See also Special Message to the Legislature by Governor Cahill, *Drug Abuse — Problem of the Decade!* 13–19, April 27, 1970. But defendant has failed to invoke the full aid of this policy for want of a demonstration that he is presently addicted. Save for defendant's statements that for five years prior to his arrest he had been using heroin, there was before the court no documentation of his present addiction. The record discloses that since his imprisonment four years ago, Davis has been drug free, despite which he persists in his claim that he is presently an addict.

At sentencing or upon motion, a similarly situated defendant should present all information pertaining to addiction so an informed decision can be made. A trial judge should not be reluctant actively to solicit whatever additional facts may shed light on any good faith claim of such addiction. While we no wise suggest an abuse of discretion by the trial judge here on the record before him, the declared policy of this State to help those who are the unfortunate victims of the drug trade compels us to remand for further proceedings in which to gather such evidence. *Cf. State v. Aleman,* 66 *N. J.* 451, 453–54 (1975). This is in accord with the greater flexibility allowed courts in sentencing defendants under the Controlled Dangerous Substances Act. *State v. Stalen,* 62 *N. J.* 435 (1973). See Hyland, "Drug Abuse and The State Criminal Justice System: Alternatives to Existing Modes of Treatment," 2 *Crim. Justice Q.* 167, 172–76 (1974).

In keeping with the grant of defendant's motion to expand the record we have been furnished with a psychiatric evaluation of Davis, consequent upon a March, 1974 examination. The report is hardly comprehensive, being tentative in tone and deficient in, among other respects, the absence of any definitive diagnosis, and is assuredly not conclusive on the issue of addiction. But it is not without value, at least to the extent that it furnishes a prognosis as follows:

Prognosis is addiction to heroin. The [sic] present time he seems somewhat obsessed with the idea that his present physical complaints are related to his being withdrawn from heroin without any medication to help him and that the correctional system in the State of New Jersey owes him a cure for his ills. His attitude of course, is unrealistic and his thinking shows a somewhat paranoid trend in this area. However, otherwise he is in good contact with reality.

He seems suitable for Patrick House program. Methadone maintenance should be helpful. It will probably have a tranquilizing effect on him which would be beneficial.

We hasten to add that even if, on remand, the trial judge should determine defendant is presently addicted, that does not end the inquiry. The ultimate issue for determination is whether the purposes for which the custodial sentence herein might reasonably be continued outweigh the interests sought to be served by transfer to a narcotics treatment center. If on remand the record remains substantially unchanged on the issue of defendant's addiction, there would be no reason to vary the custodial sentence meted out here. We repeat that even should addiction be found, that does not mean *ipso facto* defendant is to be transferred. Should other similar cases be presented for our review in the future, we would hope to be able to make an informed decision with the aid of not only a more illuminating record than that submitted here but also the trial judge's reasons for his determination. See *R.* 3:21–4(e).

## VII

As modified herein the judgment of the Appellate Division sustaining defendant's convictions is affirmed. The matter is remanded to the trial court for further proceedings, consistent herewith, in connection with defendant's motion for transfer.

PASHMAN, J. (dissenting). This is a companion case to *State v. Ruiz,* 68 *N. J.* 54 (1975) and *State v. Jester,* 68 *N. J.* 87 (1975), also decided today. It differs from the others only in that it involves separate convictions for possession and sale of a narcotic drug, both in violation of *N. J. S. A.* 24:18–4, since repealed, L. 1970, *c.* 226, § 47,

rather than possession of a controlled dangerous substance with intent to distribute and distribution, in violation of *N. J. S. A.* 24:21–19(a)(1).[1] The legislative intent behind this statute is no more clear than that behind *N. J. S. A.* 24:21–19(a)(1), which I have discussed at length in my dissent in *State v. Ruiz, supra,* 68 *N. J.* at 54. I would vacate the convictions for possession as having merged into the convictions for sale for the same reasons set out in my dissent to *State v. Ruiz, supra.* The latter convictions would, of course, be unaffected by this disposition.

*For affirmance*—Chief Justice HUGHES, Justices SULLIVAN and CLIFFORD and Judge KOLOVSKY—4.

*For reversal*—Justice PASHMAN—1.

---

[1]Defendant Davis made three sales of heroin to a police undercover agent over a period of five weeks. He was indicted on separate counts of possession and sale for each transaction, a total of six counts. He has not raised in this Court the issue of whether he could be separately convicted and punished for sale for each of the transactions. Although this Court presumably could decide that issue anyway, *R.* 2:12–11; *see State Farm Mutual Life Ins. Co. v. Zurich American Ins. Co.,* 62 *N. J.* 155 (1973), it need not do so. I do not understand the majority opinion to have decided the issue, either expressly or *sub silentio.*