224 N.J. Super. 759 (1988)
541 A.2d 309
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN GILLIAM, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 20, 1988.
Decided May 17, 1988.
*761 Before Judges FURMAN, LONG and SCALERA.
Patricia A. Kern, Designated Counsel, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney).
Simon L. Rosenbach, Assistant Prosecutor, argued the cause for respondent (Alan A. Rockoff, Middlesex County Prosecutor, attorney; Cindy Glaser, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by FURMAN, P.J.A.D.
By jury verdict defendant was convicted of attempted murder, N.J.S.A. 2C:11-3 and N.J.S.A. 2C:5-1, aggravated assault, N.J.S.A. 2C:12-1b(1), and possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a. His conviction of the weapons offense was merged into his conviction of aggravated assault. He was sentenced to an extended custodial term of 15 years, subject to a seven year parole disqualifier, for attempted murder and to a concurrent seven year custodial term for aggravated assault.
On appeal defendant raises eight issues:
POINT I: COUNSEL FOR DEFENDANT WAS INEFFECTIVE IN THAT HE FAILED TO DEVELOP AND PRESENT SCIENTIFIC EVIDENCE WHICH WOULD HAVE ESTABLISHED DEFENDANT'S INNOCENCE.
POINT II: THE 22 MONTH DELAY BETWEEN JOHN GILLIAM'S ARREST AND INDICTMENT AND THE FURTHER 10 MONTH DELAY UNTIL COMMENCEMENT OF TRIAL RESULTED IN THE LOSS OF AN IMPORTANT WITNESS CAUSING SUBSTANTIAL PREJUDICE TO THE DEFENDANT IN VIOLATION OF HIS SIXTH AMENDMENT GUARANTEE TO A SPEEDY TRIAL. (Not raised below)
POINT III: THE EXCLUSION OF THE ONLY BLACK JUROR BY THE PROSECUTOR'S USE OF HIS PEREMPTORY CHALLENGE DENIED DEFENDANT RIGHTS SECURED BY THE UNITED STATES CONSTITUTION AND THE CONSTITUTION OF NEW JERSEY.

*762 POINT IV: THE PROSECUTOR'S SUMMATION REFERRED TO FACTS NOT IN EVIDENCE MAKING THE PROSECUTOR AN UNSWORN WITNESS AND WENT BEYOND FAIR COMMENT TO DELIBERATELY INCITE THE JURY AGAINST DEFENDANT. (Not raised below)
POINT V: THE JUDGE'S CHARGE TO THE JURY ON ATTEMPTED MURDER WAS EXTREMELY PREJUDICIAL AND ERRONEOUS.
POINT VI: THE COURT ERRONEOUSLY DENIED DEFENDANT'S MOTION FOR A NEW TRIAL.
POINT VII: DEFENDANT'S SENTENCE IS ILLEGAL AND EXCESSIVE.
POINT VIII: THE TRIAL COURT ERRONEOUSLY REFUSED TO MERGE DEFENDANT'S CONVICTIONS OF AGGRAVATED ASSAULT AND ATTEMPTED MURDER.
We reverse and remand defendant's conviction of attempted murder for error in the jury charge defining that crime. We otherwise affirm.
After 10:00 P.M. on December 1, 1980, the victim Roy Downings was shot in the arm by a shotgun blast from six to eight feet away, while standing on the porch of a first floor apartment he shared with Sylvia Windham on Seaman Street, New Brunswick. The porch was above ground level. According to his testimony he saw a shotgun levelled at him out of bushes below the porch; he had a clear look at the face of the man holding the gun, whom he identified as defendant; he was shot as he tried to reach the door to hide; earlier that evening he and defendant had quarreled.
Defendant did not reside in the dwelling house where the victim was shot. His brother William and his mother did. William at first refused to give a statement to the police. A week later he appeared with his attorney at police headquarters. His statement at that time was substantially consistent with his testimony for the defense at trial. He confessed to the shooting. According to his statement, the victim banged on his window and yelled for him to come out, "I want to deal with any one of ya'all." William armed himself with the shotgun and went outside. The victim on the porch above reached in his belt, pulled out something shiny and lunged towards William. William shot him in the arm. Defendant, his brother, took the shotgun from him and "broke it down." Subsequently, the *763 grand jury returned a no-bill on charges of attempted murder, assault and weapons offenses against William.
In her jury charge the trial judge defined attempted murder as follows:
Thus in other words to find the defendant guilty of the charge of attempted murder, you must find that the State has proven, beyond a reasonable doubt the following elements. First, that on December one, 1980, it was his purpose that is his conscious object to cause the death of Roy Downings, or to cause serious bodily injury resulting in the death of Roy Downings. Second that at that time, he acted purposely or knowingly, and third, that his actions constituted a substantial step towards causing the death of Roy Downings, or causing serious bodily injury which would result in his death.
Although no objection was brought, in our view the jury charge defining attempted murder was plain error, clearly capable of affecting the jury outcome and producing an unjust result, State v. Macon, 57 N.J. 325, 337 (1971); R. 2:10-2.
The crime of murder under N.J.S.A. 2C:11-3 does not require a specific intent to kill. Purposely or knowingly committing serious bodily injury when death results is a sufficient element. In the crime of attempted murder, no death results. The jury charge before us on this appeal was subject to multiple, inconsistent interpretations by the jury. The jurors may have understood that they could reach a verdict of guilty if death was a possibility, however remote, as the result of the bodily injury inflicted on the victim. That interpretation, while logical, would have been contrary to law and prejudicial to defendant. The crime of attempted murder should be limited to attempts to cause death. It should not be extended further, inviting jury speculation without adequate guidelines whether to some degree of possibility or probability death may have resulted from the serious bodily injury inflicted in fact upon the victim.
La Fave and Scott, Handbook on Criminal Law, § 59 at 428-429 (1972), states as follows:
Some crimes, such as murder, are defined in terms of acts causing a particular result plus some mental state which need not be an intent to bring about that result. Thus, if A, B, and C have each taken the life of another, A *764 acting with intent to kill, B with an intent to do serious bodily injury, and C with a reckless disregard of human life, all three are guilty of murder because the crime of murder is defined in such a way that any one of these mental states will suffice. However, if the victims do not die from their injuries, then only A is guilty of attempted murder; on a charge of attempted murder it is not sufficient to show that the defendant intended to do serious bodily harm or that he acted in reckless disregard for human life. Again, this is because intent is needed for the crime of attempt, so that attempted murder requires an intent to bring about that result described by the crime of murder (i.e., the death of another).
State v. Darby, 200 N.J. Super. 327 (App.Div. 1984), certif. den. 101 N.J. 226 (1985), reversing a conviction of attempted felony murder, is a parallel decision. We stated there that: "`Attempted felony murder' is a self-contradiction, for one does not `attempt' an unintended result." Id. at 331. On the appeal before us, the jury charge defining attempted murder may have been understood to sanction a verdict of guilty only if death was intended, but that interpretation would make the following words redundant and superfluous: "or to cause serious bodily injury resulting in the death of Roy Downings." To the contrary, the jury may have supposed itself called upon to decide whether defendant intended by inflicting serious bodily injury an unintended result, the death of Downings. We are constrained to reverse and remand because of the logical non sequitur inherent in the jury charge and the significant risk that the jury was misled and misunderstood its role, contra to Darby.
We must decide all but one of the other issues raised on this appeal because defendant's conviction of aggravated assault is independent of his conviction of attempted murder and not subject to be set aside for trial error in the jury charge defining attempted murder. We need not decide the issue of mandatory merger of convictions of aggravated assault and attempted murder; we point out that, if the result on remand is a second jury verdict of guilty of attempted murder, merger of the aggravated assault conviction into that conviction would be mandatory under the single transaction test of State v. Truglia, 97 N.J. 513 (1984) and State v. Davis, 68 N.J. 69 (1975).
*765 Defendant's claim of constitutionally inadequate assistance of counsel, see Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and State v. Fritz, 105 N.J. 42 (1987), hinges upon his trial counsel's failure to rebut the State's expert testimony that the barium and antimony residue on defendant's hand corroborated that he had fired the shotgun. Defendant represents that generally accepted scientific opinion was readily available to rebut that conclusion, specifically expert proof that the residue on defendants' hands must have been attributable to his breaking down, rather than firing, the shotgun. In the absence of an adequate factual record, a reversal is not warranted; our decision is without prejudice to a petition by defendant for post-conviction relief, R. 3:22, on the ground of constitutionally ineffective representation by his trial counsel.
The delay between defendant's arrest and his indictment was approximately 18 1/2 months and between his indictment and his trial nearly two years. Defendant was free on bail substantially throughout. Under Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), he is not entitled to a reversal of his conviction for violation of his constitutional right to a speedy trial. The four factors to be measured according to Barker are length of the delay, reason for the delay, defendant's assertion of his right to a speedy trial and prejudice to defendant. On the record defendant has failed to establish either of the final two factors. During the four year interval he never asserted his right to a speedy trial. No prejudice to his defense is evident as a result of the delay. Sylvia Windham was not produced as a witness, but there is no indication in the record why not and no showing that she knew first hand of any facts favorable to the defense. Likewise, whether the disappearance of a shotgun shell discovered behind the house after the shooting affected the trial outcome is highly improbable; pellets in Downings' arms were identified as fired from a shotgun matching defendant's brother's.
*766 The issue of constitutional abuse of a peremptory challenge is based upon the prosecutor's exclusion of the only black on the jury venire. Defendant is himself black. State v. Gilmore, 103 N.J. 508 (1986), governs. Assuming that the burden shifted to the State to rebut defendant's prima facie showing of discrimination, that burden was met factually on the record. With the black venireman seated the prosecutor twice stated that the jury was satisfactory to him. When defense counsel objected to his subsequent peremptory challenge, the prosecutor replied on the record that the black venireman's eyes had been closed for "a very long, long time," patently a constitutional justification for the State's peremptory challenge notwithstanding its exclusionary effect.
Defendant asserts that the prosecutor's summation exceeded the bounds of proper comment on the evidence and deprived him of a fair trial. The issue is one of plain error; no objection was brought below. In our view, the prosecutor committed two flagrant improprieties in his summation: his reference to William Gilliam's silence for a week after the shooting of Downings and his representation that the "the only person ever going to be prosecuted for this case is John Gilliam." In weighing William's credibility, the jury may have supposed that he confessed to the shooting only to exonerate his brother, confident for reasons outside the record that he himself faced no risk of prosecution.
Nevertheless, neither of the foregoing prosecutorial excesses had a clear capacity to produce an unjust result, the measure of plain error, Macon, supra. From William Gilliam's own testimony as a defense witness, the jury was aware that he first volunteered his confession one week after the crime. The jury also necessarily understood that, whatever William's immunity from prosecution at the time of the trial, he had been subject to prosecution at the time he volunteered his confession; and his trial testimony was in substantial accord with that confession.
*767 Based upon our review of the entire record, we conclude that the remaining issues raised by defendant, error in denial of his motion for a new trial and excessiveness of his sentence for aggravated assault, are both clearly without merit, R. 2:11-3(e)(2).
We reverse defendant's conviction of attempted murder, vacate his sentence for attempted murder and remand for further proceedings not inconsistent herewith. We otherwise affirm.