# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0288-23

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ADAM YEUNG,

      Defendant-Appellant.

_____

Submitted September 10, 2025 – Decided September 23, 2025

Before Judges Vanek and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 22-02-0126.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Zachary G. Markarian, Assistant Deputy Public Defender, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Ashlea D. Newman, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Adam Yeung appeals from a judgment of conviction for third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4, and fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b), after a three-day jury trial. Defendant asserts he was deprived of a fair trial predicated on the prosecutor's summation, the trial court's refusal to merge the endangering and sexual contact charges, and erroneous jury instructions. Based on application of prevailing law and our review of the record, we affirm.

I.

We recount the salient facts from the trial record. Defendant hired sixteen-year-old Mary[1] to work at a local restaurant. On her first day of work, defendant put his arm around Mary's waist and over her shoulder several times.

The next day, defendant told Mary he wanted to show her the basement freezer. Defendant led Mary down into the "pitch-black" basement by placing his hands on her shoulders as they descended the stairwell. Defendant then pushed Mary toward the center of the room, groped her from behind, tickled her, and forcefully reached under her shirt and bra with his hands. During the ten-to-fifteen-minute event, Mary expressed her discomfort and desire to be released

---

[1] A pseudonym is used to protect the victim's privacy. R. 1:38-3(c)(12).

A-0288-23

but could not break herself free from defendant's hold. Defendant's actions caused Mary to be bruised "all underneath [her] chest."

In his closing argument, defense counsel attacked Mary's credibility and argued her "actions belie[d] her words," asserting:

> The point is what is [a] common sense reaction . . . when you're fearing for you[r] life, what is the main thing you want to do? Protect yourself.
>
> So, one would expect that [Mary], as soon as the basement door is open, she [would run] upstairs, she would go outside on the street and start yelling, "Hey, this guy is trying to grope me. Hey, help me, I'm fearing for my life."

In response, the prosecutor argued to the jury that Mary's "demeanor, the way she spoke to [the jury], [and] how soft she was" reflected her inability to lie.

The prosecutor also analogized the incident to a horror movie during summation, proposing:

> Think about every horror movie you've ever seen. The main character is standing at the top of the stairs. Down below is a dark basement and what are you all saying to the TV? Don't go down there, don't do it.
>
> I am [thirty-five-years-old]. I have played divisional football. If I am in a strange person's house with a basement, I'm not going down there, okay? This is a rational, reasonable fear to have for a [sixteen-year-old] girl on the second day of ever meeting her employer heading down to a dark basement, okay? And that fear escalates when she's being body hugged, when she has nowhere to go, when there's no room between the two

3

of them and she has to do what she can to survive.  That is what this case is about, ladies and gentlemen.  Power, control, fear.

Defense counsel requested merger of the endangering and criminal sexual contact charges.  The trial court denied the application, reasoning that "when the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense."  Accordingly, the trial court instructed the jury as to its deliberations on both charges.

The trial court also denied defense counsel's request to instruct the jury as to the age of consent in New Jersey, N.J.S.A. 2C:14-2(c)(4), as part of the criminal sexual contact charge.  Instead, the trial court gave the jury the model charge on criminal sexual contact, which included instructions on determining whether Mary affirmatively and freely consented to defendant's conduct.

After summations, the trial court instructed the jury regarding its consideration of counsels' opening and closing arguments stating:

> [Y]ou are the judges of the facts and, . . . you are to determine the credibility of the various witnesses as well as the weight to be attached to their testimony. You and you alone are the sole and exclusive judges of the evidence, of the credibility of the witnesses and the weight to be attached to the testimony of each witness.
>
> Regardless of what counsel said . . . it is your recollection of the evidence that should guide you . . . Arguments, statements, remarks, openings and summations of counsel are not evidence and must not

be treated as evidence. Although the attorneys may have pointed out what they think important in this case, you must rely solely upon your understanding and recollection of the evidence that was admitted during the trial.

After the jury returned a guilty verdict on both charges and the judge entered a judgment of conviction, defendant appealed.

Defendant raises the following points for our consideration:

POINT I

THE TRIAL COURT'S REFUSAL TO CHARGE THE JURY REGARDING THE AGE OF CONSENT AND ITS ERRONEOUS INSTRUCTION CONFLATING TWO DISTINCT ELEMENTS FAILED TO APPRISE THE JURY OF THE RELEVANT LEGAL PRINCIPLES

POINT II

THE STATE'S PERVASIVE MISCONDUCT COMPARING THE CASE TO A HORROR MOVIE AND VOUCHING FOR MARY'S CREDIBILITY DURING SUMMATION DEPRIVED [DEFENDANT] OF A FAIR TRIAL

POINT III

THE TRIAL COURT ERRED IN REFUSING TO MERGE THE ENDANGERING AND CRIMINAL SEXUAL CONDUCT CONVICTIONS

II.

A.

Although prosecutors are afforded considerable freedom to make vigorous and forceful closing statements, their comments must be "reasonably related to the scope of the evidence before the jury." State v. Harris, 141 N.J. 525, 559 (1995); see also State v. Smith, 167 N.J. 158, 188 (2001) (holding that the prosecutor's comments that defense experts "shaded their testimony" in the hope of future employment was inappropriate, and could have swayed the jury, requiring a new trial). The Court has recognized that:

> Criminal trials are emotionally charged proceedings. A prosecutor is not expected to conduct himself in a manner appropriate to a lecture hall. [They are] entitled to be forceful and graphic in [their] summation to the jury, so long as [they] confine [themselves] to fair comments on the evidence presented.
>
> [Harris, 141 N.J. at 559 (1995) (citing State v. DiPaglia, 64 N.J. 288, 305 (1974) (Clifford, J., dissenting)).]

"Every prosecutorial misstep [in summation] will not warrant a new trial." State v. Garcia, 245 N.J. 412, 436 (2021). "A finding of prosecutorial misconduct does not end a reviewing court's inquiry because, in order to justify reversal, the misconduct must have been 'so egregious that it deprived the defendant of a fair trial.'" Smith, 167 N.J. at 181 (quoting State v. Frost, 158 N.J. 76, 83 (1999)).

A-0288-23

Absent a timely interposed trial objection, not asserted here, we disregard errors unless they are "clearly capable of producing an unjust result." State v. Atwater, 400 N.J. Super. 319, 337 (App. Div. 2008) (citing State v. Daniels, 182 N.J. 80, 95 (2004) (quoting Rule 2:10-2)). When counsel fails to object to an argument made during closing, there is also an inference that defense counsel did not deem the summation prejudicial at the time. Ibid. (citing Frost, 158 N.J. at 83 (1999)).

"In deciding whether prosecutorial conduct deprived a defendant of a fair trial, 'an appellate court must take into account the tenor of the trial and the degree of responsiveness of both counsel and the court to improprieties when they occurred.'" State v. Williams, 244 N.J. 592, 608 (2021) (quoting Frost, 158 N.J. at 83). To that end, factors informing whether reversal is warranted are "(1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them." Atwater, 400 N.J. Super. at 337 (internal quotation marks omitted); Williams, 244 N.J. at 608.

We also consider the relative brevity of a prosecutor's comments within the context of the entire trial. See State v. Echols, 199 N.J. 344, 361 (2009). Comments in a prosecutor's summation are viewed within the context of the

entire trial, rather than in insolation.  See Atwater, 400 N.J. Super. at 335 ("In reviewing closing arguments, we look, not to isolated remarks, but to the summation as a whole.").

i.

We are unpersuaded that the prosecutor's summation, comparing the case to a horror movie, deprived defendant of a fair trial since the argument was based on Mary's trial testimony.

The prosecutor's brief reference here did not exceed the bounds of the trial record, as general imagery of a dark basement sometimes portrayed in horror movies paralleled Mary's testimony.  Because the prosecutor's argument comported with the facts developed at trial, we conclude there was no egregious conduct that deprived defendant of a fair trial.

Defendant's reliance on Williams is unavailing.  In Williams, the Court held relief was warranted because the summations far exceeded the evidence where counsel compared the defendant, who was involved in a bank robbery, to an ax-murdering villain in a horror movie.  244 N.J. at 617.

Here, the prosecutor's analogy of Mary's testimony to a classic horror movie scene was grounded in the record.  Applying the plain error standard under Rule 2:10-2, we conclude the prosecutor's argument was not clearly capable of producing an unjust result.

A-0288-23

ii.

We are also unconvinced the prosecutor's statement placing themselves "in the shoes of the victim" during summation deprived defendant of a fair trial under the plain error standard.

The prosecutor stated once during summation that he would not go into a dark basement, arguing:

> I am [thirty-five-years-old]. I have played divisional football. If I am in a strange person's house with a basement, I'm not going down there, okay? This is a rational, reasonable fear to have for a [sixteen-year-old] girl on the second day of ever meeting her employer heading down to a dark basement, okay? And that fear escalates when she's being body hugged, when she has nowhere to go, where there's no room between the two of them and she has to do what she can to survive.

Since defense counsel failed to object during trial, we review for plain error. See R. 2:10-2. Viewed under this lens and in the context of the entire summation, we conclude this short and singular reference was not so egregious as to be clearly capable of producing an unjust result. State v. Ramseur, 106 N.J. 123, 323 (1987). Cf. State v. Pennington, 119 N.J. 547, 577 (1990) (finding that prosecutor calling the defendant a "jackal," "coward," "stranger to humanity," and "liar" during opening statements and summation was prejudicial and derogatory). Based on the lack of an objection at trial, we conclude defense counsel did not perceive the prosecutor's reference sufficient to warrant

9

immediate relief.  Nor do we discern, through our independent review, this portion of the prosecutor's closing was so egregious to be clearly capable of causing an unjust result.

iii.

We also discern no error in the prosecutor's closing argument to the jury countering defense counsel's suggestion that Mary's testimony regarding the incident was not credible because "her actions belie[d] her words."

A prosecutor "is not forced to idly sit as a defense attorney attacks the credibility of the State's witnesses; a response is permitted." State v. Hawk, 327 N.J. Super. 276, 284 (App. Div. 2000) (citing State v. C.H., 264 N.J. Super. 112, 135 (App. Div. 1993)).  While prosecutors may not personally vouch for a witness's credibility, they are permitted to suggest that the jury find a witness credible so long as counsel's statements comport with the evidence admitted at trial, do not reference information outside the record, and are not the prosecutor's own opinion of the witness's credibility.  State v. Marshall, 123 N.J. 1, 156-57 (1991); see also State v. Rivera, 437 N.J. Super. 434, 463 (App. Div. 2014) (citing Marshall, 123 N.J. at 154) (a prosecutor may not "express his [or her] personal opinion on the veracity of any witness").

Absent an objection raised at trial, we are unconvinced the prosecutor exceeded the bounds of the law by responding to defense counsel's attack on

Mary's credibility  Nor do we discern plain error in the prosecutor's suggesting the jury consider "the way she spoke to you, how soft she was," highlighting the manner in which Mary delivered her testimony as it relates to her credibility. The prosecutor's argument should have been an expected response to defense counsel's suggestion that Mary was untruthful.

B.

Based on our de novo review of the record, we also conclude the trial court did not err by declining to merge the endangering and criminal sexual contact charges.  See State ex rel. K.O., 217 N.J. 83, 91-92 (2014); see also State v. Vargas, 213 N.J. 301, 327 (2013) (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).  The material elements required to establish the crimes of endangering the welfare of a child and criminal sexual contact differ.  Based on review of our decisional law, we also conclude the Legislature intended to maintain the charges as distinct.  Thus, we discern no error in the trial court's denial of defendant's request to merge the two charges.

"[T]he doctrine of merger is based on the precept that 'an accused [who] committed only one offense . . . cannot be punished as if for two.'"  State v. Herrera, 469 N.J. Super. 559, 565 (App. Div. 2022) (quoting State v. Davis, 68 N.J. 69, 77 (1975)).  However, "the [L]egislature is empowered to split a single, continuous transaction into stages, elevate each stage to a consummated crime,

11

and punish each stage separately." Id. at 567 (quoting Davis, 68 N.J. at 78). Even where "both convictions are based on the same general conduct," merger is not appropriate if one charge is directed toward a different aspect of the conduct. State v. Miller, 108 N.J. 112, 120-21 (1987).

"[I]t is beyond dispute that 'merger implicates a defendant's substantive constitutional rights.'" Herrera. at 565 (quoting State v. Cole, 120 N.J. 321, 326 (1990)). Under the required constitutional analysis, we identify the material elements of the crime and the facts of the case "attended by considerations of 'fairness and fulfillment of reasonable expectations,'" Davis, 68 N.J. at 81 (quoting State v. Currie, 41 N.J. 531, 539 (1964)), and consider:

> the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed.
>
> [Herrera, 469 N.J. Super. at 567 (quoting State v. Miller, 237 N.J. 15, 33 (2019)).]

We apply a flexible approach focusing on the "elements of the crimes and the Legislature's intent in creating them." Herrera, 469 at 567 (quoting State v. Tate, 216 N.J. 300, 306 (2013)); see also Miller, 237 N.J. at 33 ("[O]ffenses that merely offer an alternative basis for punishing the same criminal conduct will

merge."). The weight that any factor receives "depend[s] on the circumstances of the particular case." Davis, 68 N.J. at 81. "Convictions for lesser-included offenses, offenses that are a necessary component of the commission of another offense, or offenses that merely offer an alternative basis for punishing the same criminal conduct will merge." State v. Hill, 182 N.J. 532, 542 (2005) (emphasis omitted) (quoting State v. Brown, 138 N.J. 481, 561 (1994)).

Under the endangerment statute, the State was required to prove beyond a reasonable doubt that Mary was a child under the age of eighteen as defined by N.J.S.A. 2C:24-4(a)(1), and that defendant "knowingly engaged in sexual conduct with [Mary], which would impair or debauch the morals of a child." See N.J.S.A. 2C:24-4(a)(1);[2] see also Model Jury Charges (Criminal),

---

[2] N.J.S.A 2C:24-4(a)(1), endangering the welfare of a child, provides:

> a. (1) Any person having a legal duty for the care of a child[2] or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child is guilty of a crime of the second degree. Any other person who engages in conduct or who causes harm as described in this paragraph to a child is guilty of a crime of the third degree.
>
> [(Emphasis added).]

"Endangering the Welfare of a Child, Sexual Conduct (Third Degree) (N.J.S.A. 2C:24-4(a)(1))" (rev. Apr. 7, 2014) (emphasis added).

"Sexual conduct" includes sexual assault and sexual contact as codified in Chapter 14 of the Criminal Code. See State v. D.R., 109 N.J. 348, 377 (1988) (explaining the holding in Miller precludes the Court from merging convictions of child endangering, N.J.S.A. 2C:24-4(a), aggravated sexual assault, N.J.S.A. 2C:14-2(a), and sexual assault, N.J.S.A. 2C:14-2(b)); Miller, 108 N.J. at 118. "Sexual conduct" also may include acts where the defendant did not physically touch the victim and, as such, is broader and includes a variety of actions that may be deemed sexual in nature. See State v. Hackett, 166 N.J. 66, 81 (2001) (defendant standing naked in front of a window where children could see his genitals while waiting for their school bus satisfied the "sexual conduct" element of N.J.S.A. 2C:24-4(a)); State v. McInerney, 428 N.J. Super. 432, 451 (App. Div. 2012) (defendant's "encouragement of boys to accept payment for reporting on sexual behavior directed by him was conduct clearly falling within the statute as conduct that would debauch their morals").

On the other hand, the statute criminalizing sexual contact requires the State to prove: (1) defendant purposely committed an act of sexual contact with Mary, (2) defendant committed the act of sexual contact without Mary's affirmative and freely given permission, and (3) Mary did not sustain severe

14

personal injury. <u>See</u> N.J.S.A. 2C:14-(3)(b);[3] <u>Model Jury Charges (Criminal)</u>,

"Criminal Sexual Contact (N.J.S.A. 2C:14-3(b))" (rev. June 11, 2012) (emphasis

added). "Sexual contact" under N.J.S.A 2C:14-3(b), is defined in N.J.S.A.

2C:14-1(d) as follows:

> d. "Sexual contact" means an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor. Sexual contact of the actor with himself must be in view of the victim whom the actor knows to be present.

Comparing the burdens of proof, several material differences become

apparent. The crime of endangering the welfare of a child requires proof of

Mary's status as a child under the age of eighteen, while criminal sexual contact

requires proof Mary was over sixteen but under eighteen. The State was

required to prove defendant's conduct "impair[ed] or debauch[ed] the morals of

a child" to obtain an endangering conviction. However, there is no such

requirement under the criminal sexual contact statute. A finding of affirmative

---

[3] N.J.S.A 2C:14-3(b) sets forth that "[a]n actor is guilty of criminal sexual contact if he commits an <u>act of sexual contact</u> with the victim under any of the circumstances set forth in section 2C:14-2(c). (1) through (5)." (emphasis added). <u>See</u> N.J.S.A. 2C:14-2(c)(1), (3) ("(1) [t]he actor commits the act using coercion or without the victim's affirmative and freely-given permission, but the victim does not sustain severe personal injury;" and "(3) [t]he victim is at least 16 but less than 18 years old and . . . [t]he actor has supervisory or disciplinary power of any nature or in any capacity over the victim).

and freely granted permission can be fatal to the criminal sexual contact charge but not to the endangering charge. See N.J.S.A. 2C:14-(2)(c)(1) (stating "[t]he actor commits the act using coercion or without the victim's affirmative and freely-given permission").

Significantly, the sexual conduct criminalized under the endangering charge need not involve physical touching while criminal sexual contact does. The endangering charge requires the defendant to have knowingly engaged in sexual conduct, which includes a host of offenses not limited to intentionally touching the victim. See Hackett, 166 N.J. at 76, 81; McInerney, 428 N.J. Super. at 451.

The differing burdens of proof also reflect different legislative purposes. While the child endangering statute evinces a legislative concern specifically for child-victims, the sexual contact statute does not. "The status of the victim is a factor in deciding whether two offenses merge," Miller, 108 N.J. at 120, and this is particularly true when one of the offenses derives from a statute designed to protect a particular class of victims. Here, the child endangerment statute, N.J.S.A. 2C:24-4, mirrors Title 9, which was designed explicitly to protect children. See State v. Fuqua, 234 N.J. 583, 589 (2018). The sexual contact charge criminalized defendant's conduct insofar as it was nonconsensual sexual

16

conduct directed at another, regardless of their age, while the child endangering charge penalized defendant's sexual conduct specifically directed at a child.

Based on the distinct elements of the two statutes coupled with the Legislature's intent, we discern no error with the trial court's denial of defendant's application to merge the offenses. See Herrera, 469 N.J. Super. at 569.

C.

We are also unconvinced that the trial court's jury instruction on the endangering charge constitutes plain error warranting relief.

"Appropriate and proper charges to a jury are essential for a fair trial." State v. Green, 86 N.J. 281, 287 (1981). A judge must provide a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find." State v. Montalvo, 229 N.J. 300, 320 (2017).

In evaluating a jury charge, we "must not look at portions of the charge alleged to be erroneous in isolation; rather, 'the charge should be examined as a whole to determine its overall effect,' and 'whether the challenged language was misleading or ambiguous.'" State v. McKinney, 223 N.J. 475, 494 (2015) (citation omitted) (first quoting State v. Jordan, 147 N.J. 409, 422 (1997); and then quoting State v. Nelson, 173 N.J. 417, 447 (2002)).

17

There is no plain error when a judge reads "the model charge verbatim, and no objection to the . . . instruction was made at trial." See State v. Ramirez, 246 N.J. 61, 70 (2021); see also Mogull v. CB Com. Real Est. Grp., Inc., 162 N.J. 449, 466 (2000) ("It is difficult to find that a charge that follows the Model Charge so closely constitutes plain error."). Although model jury charges "are not binding authority," State v. Bryant, 419 N.J. Super. 15, 28 (App. Div. 2011), "a jury charge is presumed to be proper when it tracks the model jury charge because the process to adopt model jury charges is 'comprehensive and thorough.'" State v. Cotto, 471 N.J. Super. 489, 543 (App. Div. 2022) (quoting State v. R.B., 183 N.J. 308, 325 (2005)).

Here, defense counsel requested the judge instruct the jury that the age of consent in New Jersey is sixteen in conjunction with the criminal sexual contact charge—not the endangering charge. See Russell, 481 N.J. Super. at 344. Thus, the judge instructed the jury, without objection, utilizing the Model Jury Charge (Criminal), "Endangering the Welfare of a Child, Sexual Conduct (Third Degree) (N.J.S.A. 2C:24-4(a)(1))" (rev. Apr. 7, 2014), which does not reference affirmative consent or freely given permission.

We are unpersuaded by defendant's assertion, raised for the first time on appeal, that the trial court should have charged the jury on the age of consent in connection with the endangering charge under the plain error standard. Since

18

consent of a child under eighteen is not a defense to endangering the welfare of a child, we discern no error in the trial court's jury instruction, predicated on the model jury charge. See N.J.S.A. 2C:24-4(a)(1).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division